PORTER D. SMITH, as Administrator of the Estate of AMY A. SMITH, Deceased, Respondent. *v.* LEHIGH VALLEY RAILROAD COMPANY, Appellant.

1. NEGLIGENCE — EVIDENCE — WHEN PARTY MAKING HOSTILE WITNESS HIS OWN ON CROSS-EXAMINATION CANNOT CONTRADICT HIM. Where upon the trial of an action to recover damages for the death of plaintiff's wife who was killed in a railroad crossing accident through the alleged negligence of the defendant, the evidence is conflicting as to whether or not the whistle was blown or the bell rung as the train approached the crossing, and the defendant reads only so much of the testimony of a witness on a former trial as was to the effect that the whistle was blown and the bell rung, and the plaintiff reads from the same testimony to the effect that the bell was ringing prior to the accident at points several miles distant from the crossing, the effect is the same as if that fact, which was collateral and constituted new matter, had been elicited upon an oral cross-examination of defendant's witness, and it is reversible error to permit the plaintiff to contradict it by proof that the bell was not ringing at those points.

2. DECEDENT'S PHOTOGRAPH INADMISSIBLE — DAMAGES LIMITED TO COMPENSATION FOR "PECUNIARY INJURIES" — CODE CIV. PRO. § 1904. The personal appearance of the plaintiff's intestate is not an element to be considered by the jury in determining the loss resulting from her death; the statute limits the compensation to the resulting "pecuniary injuries," and it is to be computed only on the basis of the monetary value of the services of the deceased to her husband and children; the personal element does not enter since the statute does not compensate for grief or sorrow, but only for the actual pecuniary loss. (Code Civ. Pro. § 1904.) The reception in evidence, therefore, of her photograph, the only effect of which could be to awaken the sympathies of the jury and tend to influence their judgment in the direction of a greater award of damages, constitutes reversible error.

*Smith* v. *Lehigh Valley Railroad Co.*, 86 App. Div. 628. reversed.

(Argued January 27, 1904; decided February 16, 1904.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 13, 1903, modifying and affirming as modified a judgment in favor of plaintiff entered upon a verdict and affirming an order denying a motion for a new trial.

This action was brought to recover damages for the death

of plaintiff's intestate alleged to have been caused by the negli-· gence of defendant. The facts, so far as material, are stated in the opinion.

*James McCormick Mitchell* and *Martin Carey* for appellant. It was error to permit the plaintiff to prove on crossexamination of defendant's witnesses that the bell on the engine was ringing prior to the accident at points several miles distant from the crossing where the accident occurred, and then permit him to prove in rebuttal that the bell was not ringing at these points. (*Taft* v. *Little,* 78 App. Div. 74; *Shilling* v. *Smith,* 76 App. Div. 464; *O'Reilly* v. *E. R. R. Co.,* 72 App. Div. 228; *Kay* v. *M. S. Ry. Co.,* 163 N. Y. 447; *Deutschmann* v. *T. A. R. R. Co.,* 78 App. Div. 413.) It was error to admit the photograph of the decedent in evidence for any purpose. (Code Civ. Pro. § 1904.)

*Thomas Raines* and *Charles F. Miller* for respondent. The court did not err in permitting inquiry, by plaintiff's counsel on cross-examination, concerning the operation of the bell, or in permitting plaintiff to prove ·in rebuttal that the bell was not ringing between Rochester Junction and the place of the accident. (*Salisbury* v. *Howe,* 87 N. Y. 125; 1 Graham on New Trials, 55; *Leland* v. *Bennett,* 5 Hill, 286; *Becker* v. *Koch,* 104 N. Y. 394; *Lawrence* v. *Barker,* 5 Wend. 301; *Thompson* v. *Blanchard,* 4 N. Y. 303; *Coulter* v. *A. M. U. Ex. Co.,* 56 N. Y. 588; *Cross* v. *Cross,* 108 N. Y. 628; *Thiry* v. *T. B. & M. Co.,* ·37 App. Div. 391; *Holmes* v. *Moffat,* 120 N. Y. 159; *Chesebrough* v. *Conover,* 140 N. Y. 382.) The court did not err in admitting in evidence the photograph of the decedent. (*Nies* v. *Broadhead,* 75 Hun, 255; *Schaible* v. *W. L. I. Co.,* 9 Phila. 136.)

PARKER, Ch. J. We are agreed that the trial court was right in determining that the questions (1) of defendant's negligence and (2) of freedom from contributory negligence, on the part of plaintiff's intestate, were for the jury. But we

are divided in our view as to how we should answer the question, Was it error to permit plaintiff to prove, on cross-examination of defendant's witness, that the bell on the engine was ringing prior to the accident, at points several miles distant from the crossing where the accident occurred, and then permit him to prove in rebuttal of that which he had so drawn out, that the bell was not ringing at those points? If this question be answered in the affirmative, the judgment must be reversed, for the evidence received could not but have had very considerable weight with the jury. Indeed it is not impossible but it may have had controlling weight with the jurors' minds in passing upon the question whether defendant was guilty of negligence by failing to give notice, by the ringing of the bell or otherwise, of the very rapid approach of this train.

On the morning of February 25, 1900, and but shortly after midnight, plaintiff's intestate — while being taken across defendant's tracks, 229 feet east of the Farmington station, with her husband as driver — was struck and killed by one of defendant's engines, drawing a train at a very high rate of speed. Upon the trial plaintiff called four witnesses who testified that although close enough to have heard the bell had it been rung they did not hear it, while defendant produced thirteen witnesses who testified that they heard the whistle and bell as the train approached and passed the place of the accident. A number of the thirteen witnesses were passengers on the train, and others were not in defendant's employ.

It is true that witnesses are to be weighed and not counted, and so we cannot say — having nothing but the record before us — but that a jury would have been justified in accepting the testimony of plaintiff's four witnesses who did not hear rather than that of defendant's thirteen witnesses who did hear. We cannot know, however, how the verdict may have been affected by the testimony of the six witnesses called by plaintiff in rebuttal to show that the bell did not ring at a point some miles distant from the place of the accident when the engineer's testimony elicited by plaintiff compelled the

inference that it was ringing at that point.   The testimony of
the engineer, on his cross-examination by plaintiff, to the
effect that the bell was automatic, and was started at Rochester
Junction, and not turned off until after the accident, neces-
sarily gave the evidence afterward put in by plaintiff on
rebuttal strong probative force with the jury.   It is not
unlikely that the jury in weighing the testimony as to the
ringing of the bell at the crossing placed the testimony of
the six witnesses in rebuttal alongside of that of the four
witnesses who swore that the bell was not ringing at the
crossing.

If defendant upon this trial had called the engineer to testify
that the bell was automatic, and was started at Rochester
Junction and continued to ring until after the accident —
plaintiff would have had the right, undoubtedly, of contradict-
ing this testimony by calling witnesses to testify that at an
intermediate point the bell was not in fact ringing.   But
defendant did nothing of the kind.   So the question is pre-
sented whether plaintiff could make defendant's witness his
witness in certain respects, and then call witnesses to contra-
dict him.

It is true that the evidence was not brought out by plaintiff
on oral cross-examination of defendant's witness, but we are
agreed that the situation is the same and that this question is
to be treated precisely as if it was so brought out.   The
engineer was not in fact on the witness stand.   There had
been a previous trial, and by agreement counsel read such
portions of the testimony given on the previous trial as he
desired to offer on this one.   On such prior trial defendant
had elicited from the engineer the statement that he had set
the automatic bell ringing at Rochester Junction, and that it
continued ringing until the accident.   This enabled plaintiff
to produce several witnesses who testified that at certain
points between Rochester Junction and the place of the acci-
dent the bell did not ring.

On this trial defendant deemed it wise not to give plaintiff
an opportunity to introduce that evidence.   Plaintiff tendered

the issue that the whistle was not blown nor the bell rung as the train approached the crossing, and called, as we have said, four witnesses to testify to that effect. Defendant attempted to meet just that issue, and the thirteen witnesses called by it testified that the bell *was* rung. Defendant's counsel read so much of the engineer's testimony as was to the effect that the whistle was blown and the bell rung as the train approached the crossing, and passed. Whether the bell was rung at Rochester Junction and intermediate points was not relevant to the issue. The question was whether defendant had given notice of the approach of the train at this crossing, not whether it had been given at some other crossing. Plaintiff's evidence offered to make out his case was properly and necessarily confined to that issue. Defendant had the right to confine its evidence to that issue, and did. Perhaps its purpose was to avoid falling into a trap of which it had fair warning, but its motive was of no consequence to the trial court, whose duty it was to preserve its rights. It was defendant's right to refuse to examine its witness upon a collateral issue, or to permit plaintiff to draw out such testimony except under the well-understood penalty in such cases, namely, that of treating the witness as the witness of the party examining as to new matter.

Defendant apprised plaintiff of its position by objecting to the reading of such testimony. And when in rebuttal plaintiff called his six witnesses to testify that the bell was not ringing as the train passed them, defendant objected to that testimony contradicting a statement of defendant's engineer upon an irrelevant issue — a statement elicited by plaintiff to make available the testimony of the six witnesses gathered from a distant point.

The testimony was not relevant to the issue because there was no foundation for it save in the implication from the testimony of the engineer, whom plaintiff sought to impeach by the rebuttal evidence.

Certainly plaintiff could not swear six witnesses to prove that the testimony of the engineer was either false or incred-

ible, and at the same time justify the evidence as relevant upon the ground of the absolute verity of the inference from the engineer's testimony, namely, that no change was made in the operation of the bell between Rochester Junction and the place of the accident. This was error for which the judgment should be reversed.

We are also of the opinion that the court erred in admitting in evidence the photograph of deceased. The action was to recover for pecuniary injuries resulting from decedent's death. (Code Civil Pro. § 1904.) Such injuries are to be compensated for on the basis of the monetary value of the services of deceased to her husband and children. Into such a case the personal element does not enter, for the law does not compensate for grief or sorrow, but only for the actual pecuniary loss. The introduction in evidence of the photograph of a handsome woman could not be expected to accomplish any other result than to introduce the personal element for the consideration of the jury. Certainly the language employed in *Lipp* v. *Otis Brothers & Co.* (161 N. Y. 559, 564) would seem to be applicable to the introduction of this photograph : "Clearly, the testimony we have been considering could not render any service in the case other than to awaken the sympathies, and thus influence the judgment of the jurors in the direction of a greater award, nor is it reasonable to assume that any other result was expected from it." In that case this court reversed a judgment obtained by a father, as sole next of kin, for pecuniary injuries resulting from his son's death. No one except the father was entitled to recover, and yet plaintiff was permitted to question a brother of deceased as to brothers, sisters, nephews and nieces of deceased, and their necessities — testimony which pointed out opportunities plaintiff would have for making charitable use of any moneys left after satisfying his own necessities. The reason for the decision in that case calls for a decision in this that evidence of such a character should not be received in cases where the personal element is not permitted by the statute to enter, as in this case.

The judgment should be reversed and a new trial granted, with costs to abide the event.

CULLEN, J. (dissenting).    I dissent from the decision about to be made, on the ground that the evidence for the admission of which the judgment is sought to be reversed was relevant and competent and, therefore, admissible.    One of the principal questions in issue was whether the bell on the locomotive which struck the plaintiff's intestate was at the approach to the crossing ringing or not.    Produced as a witness for the defendant the engineer, on his direct examination, testified that the bell was ringing at the time.    On cross-examination he stated that the bell was an automatic bell; that he started it ringing immediately after leaving Rochester Junction (some distance from the scene of the accident), and that he did not do anything with it till after the accident.    He gave this further testimony : " That is my practice and that is my recollection of it.    There was no reason that night why I should have thought about the bell ringing any more than any other night before the accident happened.    I am prepared to testify that for the year preceding that, as long as I had that run, that on every night, excepting stops at the Rochester Junction and other places from Buffalo to Sayre, my bell was ringing automatically from Buffalo to Sayre whenever I had that engine ; I had that engine most always."    The fair inference from this testimony, or at least an inference which the jury might have drawn, was that the witness's statement that the bell was ringing was wholly based on his knowledge of or belief in the fact that the bell was an automatic bell, that he had set it ringing at Rochester Junction and had not touched it till after the accident.    The facts thus elicited were not at all collateral.    They were vital to the issue of whether the bell was ringing or not at the time of the accident.    This was not an inquiry into new matters, but into his knowledge of the fact to which he had testified, and its effect was, or at least the jury might have so found, to limit his testimony, which on its face was an assertion of a fact of which he was

conscious through his senses, to merely his inference or conclusion from other facts which he knew, to wit, starting the bell ringing at Rochester Junction and that it was not subsequently changed. The plaintiff necessarily had the right to contradict the modified statement made by the witness, as fully as he had to contradict the broad statement made by the witness in the first instance, and the fact that he compelled the witness on cross-examination to modify his statement in no degree impaired the right to contradict it. Therefore, testimony which proved that the bell was not ringing at a place beyond that at which the witness testified he set it ringing, seems to me clearly contradictory of the witness's testimony that the bell was ringing at the time of the accident. I think the case falls exactly within the principle of *Pontius* v. *People* (82 N. Y. 339). In that case the defendant was indicted for assault with intent to kill. To show motive the People proved that the defendant had in his possession a number of promissory notes of the person assaulted, which it was claimed were forgeries. The defendant testified that the notes were genuine and that he had lent the maker or indorser the moneys represented by the notes. It was held competent for the People to interrogate him as to his means and the source from which he obtained the moneys and then to contradict by other witnesses his statements as to those matters. Judge Danforth there said : " It was relevant to inquire upon cross-examination as to this money, where it was procured by him, at what place kept, from whence taken to make the loan ; and it was also relevant and pertinent to give in evidence any fact which would tend to show the improbability of his narrative." An examination of the record on appeal will show that the evidence here referred to was the testimony of witnesses other than the defendant, given to contradict his statement on cross-examination. It is idle to argue that the appellant's counsel sought to limit the inquiry to the operation of the bell at the exact place of the accident, when he put on the stand a witness whose cross-examination he knew, from the previous trial, would reveal the fact that the witness was tes-

tifying to a conclusion from facts and circumstances prior to the accident.

I can see no purpose for which the photograph of the deceased was competent evidence. There was no dispute as to her age, her health or physical condition. But it seems to me the error is of too little moment to justify a reversal of the judgment. Almost every day of the term we affirm judgments in cases which present far more serious error.

The judgment should be affirmed, with costs.

Gray, Bartlett, Haight, JJ. (and Vann, J., on last ground of opinion only), concur with Parker, Ch. J.; Cullen, J., reads dissenting opinion ; Werner, J., not voting.

Judgment reversed, etc.