ARTHUR NOLTE, as Administrator of the Estate of Margaret
    Nolte, deceased, Appellee, v. THE CHICAGO, ROCK ISLAND
    & PACIFIC RAILWAY COMPANY, Appellant.

**Evidence:** INTENTION: INDEPENDENT OCCUPATION: ABANDONMENT.  Where
1   it is material to prove the intention of a person evidence that such
    person had expressed an intention relative to the subject at that

time is competent on the question of his intention.  Thus in an action for the death of a married woman, in which the issue of her independent occupation was involved, evidence that decedent, who had been a professional nurse previous to her marriage, had expressed the intention of still engaging in that occupation if her husband was willing, and that she retained her equipment and wore her nurse's pin was admissible, on the question of whether she had abandoned that occupation as a separate and independent employment.

**Negligent death of married woman:** INJURY TO HER ESTATE: RIGHT OF ACTION.  Under the statutes of this state a married woman may engage in a separate business and control her own earnings the same as though unmarried; and in such case her administrator has a cause of action against one negligently causing her death for injury to her estate.

**Same:** SEPARATE ESTATE: EVIDENCE.  At common law the services of a housewife or homekeeper belong to her husband, and her administrator could maintain no action for the benefit of her estate because of her negligent death; and such rule governs the instant case, in the absence of a separate and independent occupation. - But the mere fact that at the time of her death she was not actively engaged in a profession that she had followed previous to her marriage, or the possibility that she might never have resumed such occupation, though material on the question of damages for her wrongful death, would not as a matter of law preclude her administrator from maintaining an action for the benefit of her estate.  Under the evidence in this case the question of whether decedent would have resumed her previous occupation as a nurse was for the jury.

**Same:** SEPARATE OCCUPATION: CONSENT OF HUSBAND.  In view of the statutes of this state removing the legal disabilities of married women so as to permit them to engage in an independent business, it is not necessary that consent of the husband to such independent business or occupation be shown before the wife's earning capacity can be considered, as affecting a recovery for her injury and death for the benefit of her estate.

**Same:** EVIDENCE: PHOTOGRAPHS: DISCRETION.  The admission of photographs in evidence is a matter addressed largely to the sound discretion of the court, and in the absence of an abuse of such discretion the court's ruling will not be disturbed on appeal.  The admission of deceased's photograph, in which she was dressed as a nurse, an occupation which she followed prior to her marriage, was not reversible error, in an action by her administrator for her negligent death.

**Same.** Where the answer denied the allegations of plaintiff's petition 6 that deceased was a trained nurse the introduction of a photograph showing that she wore the distinctive garb of her profession was proper, as evidence that she was actually engaged in such occupation.

**Damages:** EXCESSIVE VERDICT. A verdict for $9,500 for the negligent 7 death of a wife having an expectancy of thirty-nine and one-third years, who previous to her marriage was a trained nurse, but who was not then following her profession, and it did not clearly appear that she thus intended to create a separate estate, was excessive and is reduced to $4,000.

*Appeal from Muscatine District Court.*—HON. L. J. HORAN, Judge.

TUESDAY, MAY 12, 1914.

ACTION to recover damages for the death of plaintiff's intestate. Judgment for plaintiff, and defendant appeals. The opinion states the material facts.—*Affirmed* on condition.

*J. L. Parrish* and *R. J. Bannister,* and *Carskaddan & Pepper,* for appellant.

*Wade, Dutcher & Davis,* for appellee.

WEAVER, J.—The plaintiff's wife, Margaret Nolte, was killed while being carried as a passenger upon the defendant's railway, and this action is brought to recover the damages thus occasioned to her estate. The jury returned a verdict in plaintiff's favor for $9,500, and, from the judgment entered thereon, the defendant has appealed.

I. The defendant does not seriously deny its liability if, as a matter of fact and of law, the estate of the deceased has suffered damages by reason of her death. The substance of the defense urged is that the deceased was a married woman having no separate estate, and engaged in no independent occupation or business, and because of these conditions the recoverable damages, if any at all, are at most merely nominal.

The evidence on the trial tends to show that at the time of her death deceased was still a young woman, having an expectancy of life of thirty-nine and one-third years, and had been married only about eleven months. She had been educated as a professional nurse, and had been engaged in that service prior to her marriage. Her services in such profession were worth $25 per week. From the time of her marriage until her death she accepted no employment as a nurse. There is evidence that during at least a part of this time her health was impaired. The evidence bearing upon the question whether she had definitely abandoned professional employment or proposed to take it up again is mostly circumstantial. Plaintiff shows that while engaged therein previous to her marriage she had posted her name and profession among the professional cards upon the bulletin board of a drug store in the town of her residence and left it there during the remainder of her life. She continued to wear the "nurse's pin" or emblem of her profession. She retained possession of her nurse's garb or uniform, saying she would keep it for future use. On one occasion she said she would take such employment, but thought her husband would be opposed to it, or wanted first to "know what he would say." Again, during a period of ill health, she said to a witness that she "would go out nursing any time after she was more able," or "would go out if she felt strong enough." On one occasion, speaking to her husband concerning a call which had been made for her services, she said to him she "would like to take the case." Whether the husband expressed himself on the subject does not appear.

The appellant contends that this testimony is both immaterial and incompetent, and assigns error upon its admission. The objection is not well taken. Under the issues raised by the defendant's denials it was competent for the plaintiff to prove if he could his allegations as to the profession of the deceased, and, as bearing upon the further question whether she had definitely abandoned the same as an

1. EVIDENCE: intention: independent occupation: abandonment.

independent employment, it was proper to prove her intention with respect thereto, and it is a well-established rule that, where "the existence of a particular intention in a certain person at a certain time is a material fact to be proved, evidence that he expressed that intention at that time is as direct evidence of the fact as his own evidence would be that he had that intention." *Hillmon v. Insurance Co.*, 145 U. S. 245 (12 Sup. Ct. 909, 36 L. Ed. 706); *Mathews v. Railroad Co.*, 81 Minn. 363 (84 N. W. 101, 83 Am. St. Rep. 383); *Brand v. Abbott*, 42 Ala. 499; 4 Chamberlayne's Evidence, section 2663 et seq.; 4 Wigmore's Evidence, section 1714.

The theory on which the defense is argued to this court is that the marriage of the deceased and her conduct in refraining from independent employment during the months intervening before her death give rise to the conclusive presumption that she had permanently abandoned her profession, and that her education, training, skill, and earning capacity in such work may not properly be considered in estimating the damages to her estate on account of her death. Prior to the bringing of this action this question, as broadly as here stated, had not been raised in this court. It had been settled, however, that our statutes upon the rights of married women (Code, sections 3153 to 3164) had so far removed their legal disabilities as to permit them to engage in independent occupations, and to have and control their own earnings with the same freedom and to the same extent as if unmarried, and the death of such a woman occasioned by the negligence of another affords a cause of action against the wrongdoer for the resulting injury to her estate. *Niemeyer v. Railroad Co.*, 143 Iowa, 129; *Fleming v. Shenandoah*, 67 Iowa, 505.

On the other hand, under the rule prevailing in this state at the time of the death of Mrs. Nolte, March 20, 1910,

2. NEGLIGENT
DEATH OF MAR-.
RIED WOMAN :
injury to her
estate : right
of action.

a married woman was still so far subject to her common-law

disposition that, if she had no independent

**3. SAME: separate estate: evidence.**          business or occupation, no action would lie

in favor of her administrator for injury to her estate because of her death by the negligence of another person. This was on the theory that as a mere housewife or homekeeper her services belonged to her husband, and it could not be presumed that she would have accumulated any estate had her life not thus been terminated.

The question whether a woman's marriage raises a presumption of her abandonment of an independent profession or business in which she has theretofore been engaged, or of an election to give her time and energies for the remainder of her life to duties of a merely domestic nature, remained undecided until very recently. It came up in the *Niemeyer* case, *supra;* but the plaintiff was there able to show as a matter of fact that the interruption of her business by her marriage was temporary only, and with the express purpose of resuming it after a brief wedding trip. In *Withey v. Fowler,* 164 Iowa, 377, decided at the last term of this court, the same question was again involved. There the plaintiff, a married woman, was a music teacher of experience, but for several years prior to her injury had not been actively engaged therein, and it became necessary for us to decide whether the jury could be permitted to take into consideration her skill, experience, and capacity to earn money in her profession in assessing the damages sustained by a permanent injury to her person. After mature deliberation we ruled thereon against the position taken by the appellant in this action. It was there held that, having recognized the right of a married woman to pursue an independent business or profession, it followed by reasonable and logical necessity that the marriage of one so engaged or employed raised no presumption of an abandonment of such employment, and that, even if she ceased such employment for a time after marriage, there was no conclusive presumption that she would

not take it up again.  In other words, in an action of this
kind her earning capacity in the employment or profession
to which she had been trained is a material fact which the
jury may consider in assessing damages which her estate has
sustained because of her death.  The fact, if it be a fact, that
she is not at the time of her death actively engaged in her
separate business, and the possibility that she might never
have resumed it had she survived, are, of course, material
considerations affecting the assessment of damages, but do
not, as a matter of law, constitute a complete defense to an
action by the administrator of her estate.  The case referred
to has been too recently decided to justify us in repeating the
discussion there had.  It is controlling of the principal ques-
tion raised by the present appeal, and we are not disposed
to overrule it.  There is nothing in the record to justify the
conclusion, as a matter of law, that the deceased had definitely
or permanently abandoned her profession.  She had been
married less than a year.  During at least a part of that
time she was more or less disabled by ill health.  Her con-
versation and conduct clearly indicated her continuing in-
terest in her specialty and a continuing inclination and de-
sire to return to its practice.  Whether she was likely in fact
to resume such occupation was clearly a question for the jury,
and not for the court.

II. It is said for appellant that the husband's consent
to the independent occupation or business of his wife must
be established before court or jury can properly consider her
earning capacity therein.  No authority is
cited to that effect, and the statute which
emancipates her and guarantees her right to
manage her own affairs imposes no such condition.  The
question was mooted in the *Niemeyer* case; but the facts there
shown made its discussion unnecessary.  To attach such con-
dition by judicial pronouncement would be to take from the
statute all its force and power as a protection to married
women and enable an idle, profligate, or miserly husband to

4. SAME: sep-
arate occupa-
tion: consent
of husband.

make use of the authority so given him to coerce his wife into a surrender or division of her earnings.

While these things indicate a wide departure from the ideas embodied in the common-law conception of the marriage relation and its effect upon the status and rights of women, it is not for this court to interpose a barrier to the march of legislative progress, or to rob the statute of its natural force and effect by overnice construction. As a proposition of morals and abstract justice uninfluenced by mere precedent and prejudice, there is nothing inherently startling or repulsive in the conception of marriage as a union of equals which implies neither the effacement or subjugation of either party to the contract. It ought not to be impossible for a wife to be a helpmeet to her husband without becoming his bond servant. So long as the wife remains a woman of normal quality the fear expressed by counsel that the recognition of these principles will lead her to "desert" her husband's home "to go out and earn her own living and keep the proceeds" may safely be dismissed, for, if common observation be worth anything, the wife who possesses an independent occupation has never been less ready than her spouse to devote her separate estate to the support and comfort of the family and home. While we have no statistics upon the subject, we feel justified in saying that the granting to married women of equal rights in matters of property and business and the rapid extension of their activities in all lines of employment have occasioned no visible reduction in the number of men willing to cast an anchor to windward by marrying thrifty milliners, stenographers and washerwomen.

III. There was admitted in evidence on part of plaintiff a photograph of deceased dressed in the uniform of a trained nurse, and this is assigned as reversible error. Even if it be

5. SAME: evidence: photographs: discretion.

true that the photograph had no material value as evidence, we should be unwilling to hold it sufficient ground for ordering a new trial. It was at best and worst a trivial matter. If the

woman had not been killed, and she were suing to recover damage for personal injury, no one would think of objecting to her personal presence in the courtroom in view of the jury even if she did not go upon the witness stand; and, if the presence in court of a comely woman modestly dressed cannot be supposed to unduly disturb the judgment of a jury of twelve men of average intelligence acting under the sanction of a solemn oath, surely they ought to be considered immune against the subtle influence which counsel depreciate as arising from the view of a cold unspeaking photograph. A New York case, *Smith v. Railroad Co.*, 177 N. Y. 379 (69 N. E. 729), is cited by appellant, which tends to sustain the exception taken to this evidence; but it fails to impress us with the conviction that the error, if any, was of a character to call for the reversal of the judgment below. On the contrary we think the majority of the cases and certainly the better reason is with the view that, generally speaking, the admission or rejection of such evidence is left to the sound discretion of the trial court, though, of course, the discretion is not an arbitrary one, and its abuse may be serious error. See *State v. Hasty*, 121 Iowa, 507; *Faivre v. Manderscheid*, 117 Iowa, 732; *Pritchard v. Austin*, 69 N. H. 367 (46 Atl. 188); *Davis v. Railroad Co.*, 136 N. C. 115 (48 S. E. 591); *Railroad Co. v. Gluck*, 99 Tex. 130 (87 S. W. 817); *Jameson v. Weld*, 93 Me. 345 (45 Atl. 303); *McGar v. Bristol*, 71 Conn. 652 (42 Atl. 1000); *Verran v. Baird*, 150 Mass. 141 (22 N. E. 630); *Carey v. Hubbardston*, 172 Mass. 106 (51 N. E. 521).

In several of these cases it is held that, generally speaking, the question whether an offered photograph is practically helpful or instructive upon any material issue in the case is a preliminary question addressed to the court, and is not open to exception. It is not necessary here to go to the full extent which some of the preceding cases would justify in this respect. It is enough to say, as was said by us upon a similar question, raised in the *Faivre* case, *supra*, that, even

if the photograph could properly have been excluded, its introduction was not an error requiring a reversal.

It is also here in point to say that the answer put in issue plaintiff's allegation that deceased was a trained nurse, and upon this issue we think it was competent to show, not only that deceased was educated for that special work, and held herself out to the world as a skilled nurse, and actually took employment as such, but also that she wore the distinctive garb of her profession.

6. SAME.

IV. Exceptions were preserved to certain instructions given and requests refused by the trial court, and counsel have discussed them in argument; but the material questions thus raised are controlled against the contention of appellant by the conclusions already announced in the foregoing paragraphs, and it is unnecessary to extend this opinion for a repetition of the discussion.

V. It is finally objected that the verdict returned is excessive in amount, and we are impressed with the thought that this objection is not without merit. Were we to consider only the training, education, and earning capacity and the expectancy of life of the deceased, we would be slow to interfere with the verdict; but we think it reasonably evident that the jury did not give sufficient effect to the fact that she was not at the time of her death employed in her profession, that she had not been so employed since her marriage, that her intention to resume it was to some extent at least in doubt, and that, even if she did resume it, her position and duties as wife and mistress of her household must to some degree have narrowed and restricted the scope of her professional labors and correspondingly restricted her power and opportunity to accumulate an independent estate. The extent to which these considerations affected the value of her life to her estate neither court nor jury can say with any great degree of exactness; but, in view of the entire record, we are of the opinion that the recovery ought not in reason to ex-

7. DAMAGES: excessive verdict.

cecd the sum of $4,000. If, therefore, plaintiff shall within thirty days from the announcement of this opinion file with the clerk of this court a *remittitur* of his claim in excess of said sum of $4,000 as of the date of the entry of the judgment in the trial court, said judgment as thus modified will stand affirmed; otherwise it will be reversed, and cause remanded for retrial. The costs of this court will be apportioned, one-half being taxed to each party.

*Affirmed* on condition. All the Judges concurring.