J. H. LAWRENCE, Administrator, Appellee, v. CITY OF SIOUX CITY, Appellant.

**NEGLIGENCE:** Imputed Negligence—Joint Enterprise—Essential
1　Elements. A driver of a conveyance and an invited guest, engaged in a pleasure ride, are pursuing a ''joint or common enterprise'',— that of riding,—but not within the meaning of the doctrine of ''imputable negligence'', unless it further appear that the guest had the power, or assumed the power, to control, in some manner, the means of locomotion.

**DEATH:** Damages—Probable Vocation of Deceased—Emoluments—
2　Evidence. In an action for wrongful death, it is proper to show the talent of deceased for a certain vocation and the emoluments thereof at the place of injury.

**WITNESSES:** Competency—Objection Necessary to Raise. To object
3　to certain proposed testimony as *incompetent* raises no question whatever as to the competency of the *witness*.

**EVIDENCE:** Expert on Value of Services—Statistics—Hearsay—
4　Competency. Necessarily, a knowledge of values is largely acquired from sources other than the personal experience of the witness—for instance, from statistics and from what others, apparently competent, say.

**EVIDENCE:** Opinion—Emoluments in the Professions—Competency
5　of Witness and Testimony. Testimony by a teacher in vocal music of the extent of her classes, what she was earning, and what she knew other competent teachers were earning, with confession that such earnings were uncertain and depended largely on the character of the individual, shows competency of both witness and testimony.

**APPEAL AND ERROR: Harmless Error—Striking One of Two Substantially Similar Statements.** It is not prejudicial error to strike from the record a statement of a witness which is a substantial repetition of a former statement already in the record.

PRINCIPLE APPLIED: In an action for wrongful death, it became material to inquire into the knowledge of deceased as to the alleged careless and unsafe habits of the driver of an automobile. A witness was permitted to testify that the deceased told witness, shortly before the accident, ''that she had ridden with K before and felt he was not a safe driver and that there had been times when she . . . had ridden with him (K) when she was afraid''. Later, the same witness testified: ''She (deceased) said she knew he (K) was a reckless driver.'' This last statement was, on motion, stricken. *Held,* nonprejudicial error, because the statements remaining in the record were substantially the same as the one stricken.

**EVIDENCE: Illustrating Conditions Surrounding Accident—Experiments—Similarity of Conditions.** Evidence of experiments and practical tests out of court may be admissible as an aid to the jury in determining the issues, even though made under conditions not *precisely* the same as the conditions under investigation. So *held* in an action for damages growing out of an automobile accident.

PRINCIPLE APPLIED: A gully crossed, at right angles, a smooth and level north and south street, the bridge spanning the same being west of the center of the street, thereby causing the travel, when near the bridge, to swing to the west, in order to cross the bridge. The driver of a Peerless automobile, equipped with a Prestolite, was traveling north on a dark night, with no snow on the ground, approached the bridge, saw the *east* rail of the bridge, supposed it was the *west* rail, and, supposing he was in direct line of travel with the bridge, drove straight north and into the gully. A witness was permitted to testify that, on the next night, with a skim of snow on the ground, he drove a Ford car, equipped with electric lights, over the same route; that he approached the bridge, increased his speed, thereby increasing his lights, saw a dark spot ahead, and saw the railing when it came within the zone of his lights; that the railing appeared to be the *west* railing; that he kept straight north where the road seemed to be; that there was nothing to indicate the traveled part of the road for 30 feet south of the gully, though he saw the tracks of travel in the snow, but that it required careful observation to determine whether such tracks had gone in the more traveled part of the street; that the difference in reflectors and lenses on the

Peerless and the Ford cars and the different action of the Presto-lite and electric light rendered it difficult to say just how wide or how far the lights would be thrown; but that his lights lighted up a space some 50 feet ahead and some 8 feet wider than the ordinary roadway. All conditions on the two nights were substantially the same, except (a) the snow and (b) the difference in the lights on the two cars. *Held*, evidence properly received.

**TRIAL:** Verdict—$5,000—Excessiveness—Death. A verdict of $5,000 for the wrongful death of a talented and ambitious young woman, eighteen years of age, sustained as not excessive.

*Appeal from Woodbury District Court.*—HON. GEORGE JEPSON, Judge.

TUESDAY, OCTOBER 26, 1915.

ACTION to recover damages to the estate of Dorothy B. Lawrence, consequent upon her death, from alleged negligence, resulted in a verdict and judgment for the plaintiff. The defendant appeals.—*Affirmed.*

*Schmidt & Pike* and *Sam Page,* for appellant.

*Shull, Gill, Sammis & Stillwill* and *U. G. Whitney,* for appellee.

LADD, J.—In the evening of January 2, 1913, John M. Knott arranged with the deceased, Dorothy B. Lawrence, and Martha Whitney to take them in an automobile to their homes, after choir practice at St. Thomas Episcopal Church in Sioux City, and thereafter invited Brooks Carry to accompany him. Each of the party was about eighteen years of age. They started from opposite the church and, after passing along several streets, moved north on Myrtle Street. A gully twenty feet wide and eighteen feet deep extended across this street, over which there was a bridge somewhat west of the center. The street had been graded to within about thirty feet of the gully, and at the end of the grade, the traveled way swerved to the west before crossing the bridge. The driver, as he approached, observed the east railing of the bridge, and, owing to its location, supposed it to be on the west

side and that he was driving toward the bridge.  The night was dark and there were no lights or barricades; and when Knott first noticed that he was east of the bridge, the car was so near the gully that he could not stop before being precipitated to the bottom of the gully, thereby causing the death of Dorothy B. Lawrence and serious injuries to Martha Whitney.

I. That the evidence was such as warranted a finding that the city was negligent is not questioned.  It is contended, however, that the court erred in several rulings, one of which was in not directing the jury that the parties were engaged in a joint enterprise and that any negligence on the part of the driver, Knott, should be imputed to decedent.  The jury was correctly instructed with regard to her duty to care for herself and thereafter told that, if she "had or assumed the right to direct or control the operation of the said automobile, and you further find that the driver of the automobile, John Knott, was guilty of negligence contributing to' the injury of plaintiff's intestate, then the negligence, if any you find, of the driver, John Knott, will be imputed to plaintiff's intestate and the plaintiff cannot recover herein."  The converse also was stated.

1. NEGLIGENCE: imputed negligence: joint enterprise: essential elements.

No exception to this instruction was saved, and for this reason, we might well pass over the contention that decedent was engaged with Knott in a joint enterprise and therefore that his negligence, if any, should be imputed to her.  It is to be said, however, that the record is utterly without evidence of such joint enterprise.  She rode with him in the car solely upon his invitation.  The express purpose was to take her home, and there was no evidence to the contrary, save that a roundabout way was chosen, with the manifest design of carrying Martha Whitney home first.  "The longest way around is the shortest way home" with young people on such occasions, and the mere fact that a pleasure ride was taken on the way did not obviate what all parties testified was the

purpose of the automobile ride. True, decedent persuaded Martha Whitney to remain at her home in order to accompany her to choir practice, with the understanding that Knott would take them home in an automobile; but this latter was on the proposal and invitation of Knott, when decedent was urging Martha to remain with her. Both were taking the ride at his invitation, and there was no evidence from which it might have been inferred that any of the three riding with Knott was to or did control or assume to control the operation of the automobile, in any respect. Of course, when one at the invitation of another goes riding, he is, in a sense, carrying out a common enterprise, i. e., that of riding. There must be something more, however, to constitute a joint enterprise such as will render the party accepting the invitation responsible for the conduct of the driver. The guest must be in a situation to assume the control, or control, in some manner, the means of locomotion. See *Hubbard v. Bartholomew*, 163 Iowa 58. Here, decedent had nothing to do with the direction in which the automobile was moving or the route over which it passed or the operation of the machine, and did not, in fact, assume or undertake in any manner to exercise control over the driver or the car. This being so, the negligence, if any, of the driver, could not be imputed to decedent, who was riding solely as his guest. The case is ruled by *Nesbit v. Town of Garner*, 75 Iowa 314, and *Withey v. Fowler Co.*, 164 Iowa 377, each holding that, in such circumstances, the doctrine of imputable negligence has no application. See also *Larkin v. Railway*, 85 Iowa 492; *McBride v. Railway*, 134 Iowa 398. There was no error.

II. The mother of decedent, after testifying to facts tending to show talent on the part of her daughter for drawing, and that .the latter intended to prepare herself for super-

2. DEATH: damages: probable vocation of deceased: emoluments: evidence.

visor's work in that department, said that she knew what the salary of a teacher engaged in such work in Sioux City was, and she was then asked to state such salary; and, over objection ''as incompetent, irrelevant and immaterial and not

a proper basis under the state of the record for the measure of damages", answered: "The salary at the present time is $1,200 per year." On cross-examination, she explained that she had obtained her information from the principal of one of the graded schools and from the statistics of the Sioux City schools. Defendant moved that her testimony with reference to the amount of compensation of an instructor of drawing be stricken, as "incompetent, irrelevant and immaterial, too indefinite and not founded upon any material fact upon which such statement might be based and not a proper basis for the measure or appraisement of damages". The court overruled the motion. It is not questioned that the evidence was competent, as bearing upon the earning capacity decedent might have had, had she lived. *Eginoire v. Union County*, 112 Iowa 558; *Gregory v. Railway*, 126 Iowa 230; *Nolte v. Railway Co.*, 165 Iowa 721. What appellant insists upon is that the witness was not qualified to testify, but that point was not raised by the objection or in the motion to strike. An objection as incompetent merely goes to the evidence, and not to the competency of the witness. *Ball v. Railway*, 74 Iowa 132; *State v. Brown*, 128 Iowa 24.

3. WITNESSES: competency: objection necessary to raise.

It is to be said, however, that knowledge of the value of services necessarily is based largely on information derived from others, either orally or in print. If the statistics referred to recited what was paid, this, with the information obtained from the teacher, afforded some basis for her opinion, the value of which was for the jury. In *Hudson v. Railway*, 92 Iowa 231, witnesses who based their opinions on market reports and quotations were held competent. In *Frick v. Kabaker*, 116 Iowa 494, a witness who had seen the invoices of goods was held competent to testify to the cost price. As observed in *Wiley v. Dean Land Co.*, 171 Iowa 75, that much of her information was derived from others is not objectionable; for, necessarily, knowledge of values is largely

4. EVIDENCE: expert on value of services: statistics: hearsay: competency.

so acquired and the hearsay rule is without application. The motion to strike was rightly overruled.

III. Johanna Anderson, a teacher in vocal music, testified to having given decedent lessons therein and to her aptness and interest as a student and the high quality of her voice, and that she might have become a teacher of music, and that witness knew what the earnings of a teacher of vocal music were. She was then asked what such earnings were and, over the objection as incompetent and irrelevant, answered: "Between $100 and $150 per month." On cross-examination, she stated that such earnings were uncertain, depending largely upon the exertion and the character of the individual.

5. EVIDENCE: opinion: emoluments in the professions: competency of witness and testimony.

"Q. The foundation of your answer had no reference as to what anybody else was earning?" A. "So far as definite knowledge is concerned, my answer was based upon what I was earning."

She further testified that she was teaching twenty-five or thirty students. On redirect examination, she stated that she knew how much some music teachers in Sioux City were earning, knew that competent teachers generally charged between $1 and $2 per lesson. Thereupon, counsel for the defendant moved that the testimony of the witness to the effect that the earnings of a music teacher were from $100 to $150 per month be stricken from the record, for the reason that the same was incompetent and the witness was not shown competent to testify. The motion was overruled, and we think rightly so. It was disclosed in her testimony that teachers differed greatly in their earning capacity, that different prices were charged and different numbers of pupils procured, and the range of incomes received was brought out; and we think not only that she was sufficiently qualified to speak on the subject, but that her testimony had some bearing on the probable earning capacity of deceased.

IV. Helen Farrell was called as a witness, and testified that she had a conversation with decedent shortly before she left the church to take the automobile ride, and that decedent stated that "she had ridden with John Knott before and she felt he was not a safe driver"; and also that "she had ridden with him before and that there had been times when she and others had ridden with him when she was afraid". The court afterwards asked: "Did she say anything more about his driving than what you have already stated?  A. She said she knew he was a careless driver."

6. APPEAL AND ERROR : striking one of two substantially similar statements : non-prejudicial error.

The motion to strike out the answer as a mere conclusion and no statement of fact was sustained. Evidently, the answer was not responsive, but it did not appear to be a mere conclusion, as suggested in the motion; but the previous answers, in the circumstances, seem to cover the ground, and the ruling was without prejudice. One might be an unsafe driver and yet not be careless; but Knott had operated an automobile several years, and the only inference from the use of the language employed was that he did not exercise proper care. The answer stricken was perhaps stronger, but meant the same; and, though the ruling might well have been otherwise, the probative force of the statements that "she felt he was an unsafe driver", and that there were times, when he was driving, that she was afraid, was practically the same. The ruling was not prejudicial.

V. M. L. Sears, who was familiar with Myrtle Street, drove a Ford car down the route which Knott had pursued the evening previous. The conditions of the ground were precisely the same, with the exception that a "slight skim of snow had fallen on it". Both nights were comparatively dark. The car was equipped with electric lights; and Sears testified that, as he approached the bridge, he observed its railing and kept straight north in

7 : EVIDENCE : illustrating conditions surrounding accident : experiments : similarity of conditions.

the direction the road seemed to indicate he should go; kept his car under control so as to avoid trouble, and looked ahead. In approaching the gully, he increased the speed, thereby brightening the lights, and saw a dark spot ahead. He had seen the east rail of the bridge, upon its coming into the zone of his lights, and it appeared, owing to its location, to be the left railing of the bridge. He testified that the street was level for twenty to thirty feet distant from the bridge south; that there was nothing to indicate the traveled portion of the road for a distance of thirty feet south of the gully; that he could see the tracks through the snow, but there would be nothing else to indicate the course of the traveled way; and that one would have to make careful observations to determine whether it was in the more traveled part of the street where wheels had gone. His testimony further was, in substance, that, owing to difference in reflectors and lenses and the pressure, where a Prestolite is used, and in speed, where the automobile is equipped with electric lights, it could not be said just how far or how wide the lights of his Ford automobile or those of the Peerless, driven by Knott, were or would be likely to be thrown; but that the lights on his machine threw light 40 or 50 feet ahead and 6 or 8 feet wider than the ordinary roadway. Conditions were substantially the same as on the night of the accident, save the existence of the snow and the difference in the lights, but we do not regard these as controlling. The testimony of facts, as they existed, was rightly received, as was that of appearances on approaching the bridge and gully, as illustrating and confirming how these must have been seen by Knott. Had Sears' lights been like those on Knott's car, there could be no doubt as to its admissibility. But the difference was only in degree and might have been taken into account by the jury; for, whether first seen at 40 or 50 feet or at 100 feet, the distance would not change the relative appearance, and this was the object of the testimony. Under the circumstances, the possible dissimilarity in lights was not such as to exact the exclusion of Sears' testimony.

VI. The damages were assessed at $5,000. Appellant contends that this was excessive. In *Farrell v. Railway,* 123 Iowa 690, the allowance of $3,000 as damages for the death

**8.** TRIAL: verdict: $5,000: excessiveness: death.

of a girl eight years old was approved; and in *Nolte v. Railway,* 165 Iowa 721, the amount of the judgment was reduced to $4,000, but there the woman was married, and had temporarily abandoned her former occupation as nurse. Here, decedent was near the age of majority, was shown to be talented and ambitious and likely to engage in pursuits much more remunerative than that of a nurse, and we are of opinion that the damages awarded ought not to be regarded as excessive.—*Affirmed.*

DEEMER, C. J., GAYNOR and SALINGER, JJ., concur.