FRED ALLEN, as Administrator, etc., of JOSEPH ALLEN, Deceased, and Individually, Respondent, *v.* JOSEPH STOKES, Appellant.

First Department, November 22, 1940.

*Samuel N. Leiterman* of counsel [*E. Edan Spencer* and *Bernard Glassman* with him on the brief; *E. Edan Spencer*, attorney], for the appellant.

*H. Eustace Williams* of counsel [*Lucille Edwards Chance*, attorney], for the respondent.

CALLAHAN, J. This action is one for damages for the alleged negligent killing of an eleven-year-old boy. The jury returned a verdict in favor of the plaintiff. Upon the trial the court received

in evidence a photograph of the dead boy lying in his coffin. We think that the admission of this picture was highly prejudicial, in that it tended to arouse the sympathies of the jury. The reason given for placing the photograph in evidence was that plaintiff desired thereby to identify the boy and to prove his size and appearance. We think that evidence of these facts might have been introduced by means other than one tending to improperly influence the jury's judgment. We are required, by reason of this error, to reverse the judgment. (*Smith* v. *Lehigh Valley Railroad Co.*, 177 N. Y. 379.)

There remains for determination the question as to whether we should dismiss the complaint or order a new trial.

Defendant offered no proof, but rested on plaintiff's case. The problem presented, therefore, is whether a *prima facie* case was established by plaintiff. The evidence showed that on the night of November 26, 1937, defendant was seen driving a taxicab north on Seventh avenue between One Hundred and Fifteenth and One Hundred and Sixteenth streets in New York city. An object was noticed on the front of defendant's taxicab wedged in between the bumper and the radiator. Defendant proceeded north on Seventh avenue to One Hundred and Seventeenth street, where his cab turned west a short block, and then turned north on St. Nicholas avenue to One Hundred and Eighteenth street. At that point defendant was stopped by the driver of another taxicab, who called defendant's attention to the object on the front of his cab. This object turned out to be the body of a boy (Joseph Allen) in an unconscious condition. Defendant removed the body from the front of his car, placed it in his cab, and took it to the hospital. The boy was still alive, but death ensued a short time thereafter. Upon examination it was shown that the boy had suffered a fractured femur and an injury to his head.

The evidence further disclosed that at the time the body of the deceased was removed from the cab, it was wedged in an indentation in the front of the radiator grillwork, which was about a foot wide. The grillwork was broken and pushed back against the radiator of the car. It was also shown that the front license plate of defendant's car was bent backward.

After the occurrence, defendant told police officers that he did not know how the body of the deceased got into the position where it was found on the front of his car. The police officer noticed that defendant's breath smelled of alcohol, and he gave other signs of intoxication. Defendant admitted that he had been drinking intoxicating beverages. Defendant was later arrested, but acquitted of driving his car while intoxicated.

On the evening in question deceased had been visiting friends at 67 Lenox avenue, which is north of One Hundred and Thirteenth street. Between nine-thirty and ten P. M., he left for home. His residence was at 53 West One Hundred and Twelfth street, which is east of Lenox avenue. The discovery of the body took place at approximately the same hour that the boy left 67 Lenox avenue.

One of the plaintiff's witnesses testified that he saw the defendant's cab going north on Seventh avenue between One Hundred and Fifteenth and One Hundred and Sixteenth streets. Another witness (a police officer) said defendant had told him that he had driven his cab westerly across One Hundred and Seventeenth street from Lenox avenue. These statements would indicate that the defendant had come from a point south and east of the place where he was stopped, i. e., he was coming from the direction in which the deceased was last seen alive.

The testimony disclosed the boy's height and weight, and the jury could determine how well the driver of a taxicab could see such a person and could also determine the probability as to whether the boy was a pedestrian when struck, considering all the facts, including the place where his body was found.

While the evidence was meagre, we think that from it a jury would be justified in inferring that an accident had occurred at a point east of One Hundred and Fifteenth street and Lenox avenue shortly before the discovery of the deceased on the front of defendant's car; that the accident involved a collision between the deceased while he was a pedestrian and the car driven by the defendant, and that defendant's car had struck the deceased with great force.

While there was no direct evidence that such a collision had actually occurred, we think that the circumstances warranted the jury in finding that an occurrence of the nature outlined had taken place. These circumstances tended to lead fairly and reasonably to the conclusion drawn and to exclude any other hypothesis, fairly and reasonably. (*Ruppert* v. *Brooklyn Heights R. R. Co.*, 154 N. Y. 90, 94.)

We think further that, from the facts proved, the jury would be justified in inferring that the collision occurred through the negligence of the defendant. The force of the collision, which apparently was sufficient to indent the radiator grillwork, would indicate that the defendant's car was traveling at high speed. That defendant did not know of a collision of the nature of the one involved would warrant the jury in finding that he was not exercising due care, or using his senses of hearing and sight, or proceeding cautiously.

. . .

It is suggested by the appellant that the body of the boy might have been placed on the front of the cab before the defendant entered it, and without defendant's knowledge. But there is no proof when defendant's cab had last stopped before the boy was found. Even if such a stop had taken place, the jury might well have found that the defendant, under such circumstances, would have observed the body of the boy upon entering his cab. If, as the jury might find more probable, the accident occurred while defendant's car was in motion, it is difficult to understand how such a collision could happen without the defendant's knowledge, if he was vigilant.

Defendant contends that a finding of negligence would be an inference based solely on the first inference of an accident. We think not. Both inferences rest upon the circumstances proved. They may be termed parallel inferences based upon the same facts.

We realize that in an action of this nature the burden of proving defendant's negligence and the proximate cause of the accident is on the plaintiff. These essential elements may be established, however, by circumstantial, as well as direct evidence. It is sufficient if the proof includes sufficient positive evidence of facts from which an inference or conclusion of negligent conduct may be drawn. (See *People* v. *Harris*, 136 N. Y. 429.)

In *Ingersoll* v. *Liberty Bank of Buffalo* (278 N. Y. 1) the Court of Appeals stated the rule to be that it is enough that plaintiff shows facts and conditions from which the negligence of the defendant and the causation of the accident by that negligence may be reasonably inferred (*Stubbs* v. *City of Rochester*, 226 N. Y. 516); that proof of defendant's negligence does not mean that plaintiff's evidence must exclude or eliminate every other possible cause (*Rosenberg* v. *Schwartz*, 260 N. Y. 162, 166) or point out the particular act or omission which caused the injury. (*White* v. *Lehigh Valley Railroad Co.*, 220 N. Y. 131.)

In this case the burden of proof concerning contributory negligence of deceased was on the defendant. Under the circumstances, this issue likewise was for the jury.

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

GLENNON and DORE, JJ., concur; UNTERMYER, J., concurs in result; MARTIN, P. J., concurs in the reversal of the judgment but votes to dismiss the complaint on the ground that the plaintiff failed to establish a cause of action.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event.