Cory Kunzman, appellee, v. Cherokee Silo Company, Inc., appellant.

No. 50418.

886

April 3, 1962.

McDonald, Sayre & McDonald, of Cherokee, for appellant.

James & Greer, of Spencer, and Miller, Miller & Miller, of Cherokee, for appellee.

THOMPSON, J.—Plaintiff, Cory Kunzman, is a farmer and stock feeder in O'Brien County. Defendant, Cherokee Silo Com-

pany, Inc., builds silos. August 7, 1959, by a signed agreement on defendant's printed form, it agreed to build, on plaintiff's farm, a cylindrical, concrete stave silo, 40 feet high and 14 feet in diameter, for which plaintiff agreed to pay $1977.21. Printed on the back of the form, was:

### "Guarantee

"You can depend upon your silo to be the best and upon us to stand back of any defective material or workmanship for a period of ten (10) years. No special precautions are needed for grass, silage, or shelled, ground or ground ear corn containing not less than 20% moisture."

Plaintiff was then feeding 110 head of cattle. He testified he told defendant's representative he would use the silo for corn silage or shelled corn and asked him if it was strong enough and was told it was.

Plaintiff filled the silo with shelled corn with a moisture content of 31%. Instead of curing, the corn shortly spoiled, except about four feet at the bottom of the silo. This action is for damages, based upon the pleaded negligence of defendant, in constructing a silo that was defective, and, in constructing it improperly and in such manner that cracks in the silo appeared, permitting the outside air and moisture to enter the silo. Damages claimed were $300 for replastering the silo and tightening its hoops, $200 for removing spoiled corn and $4400 for loss of the corn which spoiled. Trial to a jury resulted in verdict and judgment for plaintiff for $3800. Defendant appeals.

The errors assigned are to orders overruling defendant's motions for directed verdict, judgment notwithstanding verdict and new trial, and defendant's objections to questions put to witnesses for plaintiff and to Exhibit 19, placed in evidence by plaintiff. In considering the assigned errors involving its sufficiency to support the verdict, the evidence will be viewed in the light most favorable to plaintiff.

I. Defendant vigorously contends the court should have directed a jury verdict in its favor. We do not agree. There was substantial evidence for the plaintiff that within approximately one month after the silo was built by the defendant

and filled with shelled corn by the plaintiff much of the corn was found to be spoiled. The plaintiff attempted to feed some of it to his cattle, but they did not eat it well; and there is further evidence that it had little if any nutritional value. After talking with John Longstreet, county extension director for 25 years past and a graduate of the animal husbandry division of Iowa State University, and others, the attempt to feed the corn was abandoned and it was spread on the fields for fertilizer. This did not apply to about 600 bushels in the bottom four feet of the silo, which was not spoiled. Plaintiff filled the silo with about 5000 bushels of shelled corn. The silo was completed by the defendant's employees about October 5, 1959, and about four days later plaintiff commenced filling it with the shelled corn.

When plaintiff commenced to feed the corn, about November 9 following, it was discovered to be spoiled. Not long thereafter, the plaintiff discovered a number of cracks in the cement lining of the silo, about 11 in number; and further observed that some of the hoops on the outside of the silo were loose. The cracks were not large, but there is evidence they were sufficient to permit air to get into the stored corn. They started about four feet from the bottom and ran upward; and it is significant that the corn on the bottom four feet, below the cracks, was not spoiled.

The defendant contends that plaintiff's evidence was insufficient to generate a jury question, for several reasons. It is said that hairline cracks and loose hoops in themselves do not show negligent construction. But if these matters permitted air to circulate into the corn stored in the silo, we think there was a jury question on the failure of the defendant to use ordinary care in its construction. In Ryder v. Schlichter, C. C. A., Third Cir., 126 F. 487, 488, the court quoted with approval this: " "* * * the essentials of a practicable silo are: (1) It must be, for the proper preservation of the silage, airtight at all times when filled * * *.' " This is the tenor of the plaintiff's evidence in the instant case.

The defendant further contends that the standard of care required of it in the construction of the silo is that it be done in the customary and usual manner used generally in the business of erecting concrete silos; that the evidence shows the silo in

question was so constructed; and the plaintiff's evidence failed to show to the contrary. Authorities are cited. This rule is analogous to that prevailing in malpractice suits against physicians, who are held to the same degree of skill and standards of practice of other physicians under similar circumstances. Wheatley v. Heideman, 251 Iowa 695, 706, 102 N.W.2d 343, 350. But it is often a jury question whether such a standard of care has been exercised. Accepting plaintiff's evidence in the light most favorable to him, as we must, it appears the metal hoops were not sufficiently tightened; as a result of this, cracks sufficient to admit air into the silo after it was filled developed; and the corn spoiled because of the air. It can hardly be contended that this was a construction in accordance with accepted and customary practice; at least the jury might well find it was not. In fact, to those who believed plaintiff's evidence, as the jury apparently did, if the method adopted by the defendant was the customary and usual one in such construction the market and use for that type of silo would rapidly deteriorate.

Again, the defendant urges that the loose hoops and the cracks were not discovered for some time after the silo was built, and so the theory they were caused by weather conditions is as reasonable as that they were due to faulty construction. It is necessary only to point out that the plaintiff was not an expert in silo construction; that the silo was finished in October; that the corn was put into the silo in November and was found spoiled and the defects were discovered in December. In view of the short time between these incidents, a jury question arose as to whether the original construction was defective.

Again, the defendant says that the question of the reason for the spoilage of corn is a subject of expert testimony by biochemists; plaintiff produced no testimony by such experts, and so there is no real evidence that the corn spoiled because of the air admitted through the cracks. Here defendant seems to be saying that the only expert who can be admitted to have any real knowledge must be one who has made a study of biochemistry and holds a college degree in the subject. It is not easy to define what is meant by an expert in these situations; but generally it refers to one who has gained some special knowledge or skill, through study, or experience in like situations. Plaintiff's

witnesses who testified to the condition of the silo and that admission of air into high moisture corn in a silo will cause spoilage included these, in addition to John Longstreet, referred to above: V. C. Pierce, manager of a grain-and-feed company in Cherokee for the past 12 years—the company handles and stores grain, including shelled corn, as a part of its business; also testifying for plaintiff were M. Ben Brasser, manager of an implement company; a farm owner with experience in storing grain in silos; and a stockholder in and former vice-president of a silo building company; Edwin Galm, a farmer and cattle feeder in the vicinity; Wayne Woodall, another farmer and operator of a corn shelling machine; and Rodney Lorenzen, another farmer and feeder living nearby, who is a graduate of Iowa State University, where he majored in animal husbandry and minored in agronomy.

We said in Grismore v. Consolidated Products Co., 232 Iowa 328, 342, 5 N.W.2d 646, 654: "* * * a witness experienced over many years in the raising of turkeys and the feeding of buttermilk, and having a knowledge of the characteristics of turkeys, the conditions which affect them, and the hazards of raising them, as this witness possessed, was better qualified to answer the question than the ordinary juror. One of the tests for the admission of an expert opinion is whether the subject is such, and the witness is so qualified, as to aid the jury in the proper determination of a question before them. We think that test was met."

The quotation is peculiarly apropos of the situation before us here.

 The defendant also urges that the plaintiff accepted the silo, and that "an acceptance of the * * * structure as in compliance with the contract will ordinarily constitute a waiver of a full performance or defective performance * * *." Waiver, like estoppel, generally cannot be relied on unless pleaded. Robbins v. Beatty, 246 Iowa 80, 89, 67 N.W.2d 12, 17, and citations. We find no such pleading here. Nor do we find a sufficient basis in fact for the contention if it were pleaded.

Defendant's claims of error at this point lack substance.

 II. The silo was built presumably under the terms of a written contract between the plaintiff and defendant. Included

in this was a so-called "guarantee" paragraph, quoted above. Plaintiff's action was not for breach of warranty, but was based upon negligence. During his testimony the plaintiff was permitted over objection to read this paragraph to the jury, and the defendant assigns error. The entire contract, including the guaranty clause, had previously been admitted without objection and so was before the jury. We find no reversible error here. The same answer may be given to the claim that witness Pierce was permitted over objection to answer a question in which the guarantee was referred to.

In addition, we think the guarantee was properly in evidence and was properly considered. In Matthys v. Donelson, 179 Iowa 1111, 1116, 160 N.W. 944, 946, we quoted with approval this: "A tort may be dependent upon, or independent of, contract. If a contract imposes a legal duty upon a person, the neglect of that duty is a tort founded on contract; so that an action ex contractu for the breach of contract, or an action ex delicto for the breach of duty, may be brought at the option of the plaintiff." The case contains an interesting discussion of the subject, and answers all of defendant's contentions on the point. This includes its claim that the plaintiff should not have been allowed to relate his conversation with defendant's salesman with whom he made the preliminary arrangements. No objection was made that the evidence tended to vary the following written contract; the complaint was that it was irrelevant because of "the case not being one in warranty but one in negligence."

The case before us is one in which the claimed neglect of duty of the defendant arises, if at all, out of contract; and the contract may properly be shown in evidence.

III. Another assignment asserts there was error in the admission of plaintiff's Exhibit 19. This was a Mason jar, partly filled with a dark jelly-like substance. The plaintiff testified that it was a sample of the condition of the corn in the silo which he took therefrom in December of 1959. He said that it was in the same condition at the time of the trial as when he took it from the silo, except "it is a little more moldy but it is still black and the same characteristic. * * * Originally it was blacker." He also said that with the exception of the change in

color the sample was typical of all of the contents of the silo above the four-foot level.

■■■■■■ Samples are admissible in evidence if they are properly identified as to their source, if they reflect the condition of the substance at the time involved in the issues, and if offered to show the condition of a large amount of the material must appear to be fairly representative of the whole. 32 C. J. S., Evidence, section 607, pages 458, 459. Exhibit 19 meets all of these tests, except for the change in color, and that it was somewhat moldier. An alteration in the substance does not necessarily affect its admissibility when the alteration does not obliterate or change the condition sought to be shown. 20 Am. Jur., Evidence, section 719, page 602. Here, the only change was in the color, which was explained to the jury. There was no change in the general texture, which was the condition sought to be proven. The competency of the evidence was not affected, merely its weight. People v. Preston, 341 Ill. 407, 173 N.E. 383, 387, 388, 77 A. L. R. 631. The trial court did not abuse its discretion in admitting Exhibit 19. "The determination of relevancy and explanatory value of demonstrative evidence is primarily within the discretion of the trial court * * *." Smith v. Ohio Oil Co., 10 Ill. App.2d 67, 77, 134 N.E.2d 526, 531, 58 A. L. R.2d 680, 688. See also State v. Drosos, 253 Iowa 1152, 1159, 114 N.W.2d 526, 530, and citations.

This answers also the defendant's related complaint that witness Pierce was permitted to answer a question as to whether corn, aside from the mold, would look "something in that nature if it was exposed to air"? Objection was that the exhibit was not a "direct" representation of the corn in the silo. The question excluded the mold, and was not vulnerable to the objection.

■■■■■ IV. Error is further predicated on the admission of the testimony of witnesses Longstreet, Pierce, Brasser and Lorenzen as to their opinions of the cause of the damage to plaintiff's corn and the proper construction of silos so as to prevent spoilage. We have discussed this question in Division I. It is true, as defendant argues, that witnesses not properly trained and experienced should not be permitted to give their opinions when the question is a proper subject for expert opinion only.

But we have held the witnesses were sufficiently qualified by training and experience, and their opportunities for observation were adequate.

■■ ■■ Further, the defendant urges that hypothetical questions were asked of these witnesses which did not accurately or definitely state the record. There was no error. Some of the questions were not in fact hypothetical; as to others, the only objection was that they did not accurately state the record. The trial court has considerable discretion in passing upon hypothetical questions. State v. Hodge, 252 Iowa 449, 459, 460, 105 N.W.2d 613, 619;In re Estate of Telsrow, 237 Iowa 672, 682, 22 N.W.2d 792, and citations. We have also said that counsel who objects to such a question should advise the court in what respect it fails to state the record properly and may not rely upon a general objection. State v. Hodge, supra, loc. cit. 252 Iowa 459, 460, 105 N.W.2d 619.

We have examined the record carefully in the light of the errors assigned by the defendant, and find no error.—Affirmed.

All JUSTICES concur except BLISS, J., not sitting.