**Norma E. ADAMS, Administrator of the Estate of Merrill R. Adams, Deceased, Appellee,**

v.

**Melvin DEUR and Jacob Vander Molen, d/b/a Peoria Stockyards, Roger Bandstra, and Clarence Richard De Boom, Appellants.**

**Clarence Richard De BOOM, Cross-Petitioner,**

v.

**Melvin DEUR and Jacob Vander Molen, d/b/a Peoria Stockyards, and Roger Bandstra, Defendants to Cross-Petition.**

**No. 53602.**

Supreme Court of Iowa.

Dec. 9, 1969.

Bradshaw, Fowler, Proctor & Fairgrave, by Michael H. Figenshaw, Des Moines, for appellants, Melvin Deur, Jacob Vander Molen, d/b/a Peoria Stockyards, and Roger Bandstra.

Brierly, McCall & Girdner, Newton, for appellant, Clarence Richard DeBoom.

Johnson, Jordan & Lane, Knoxville, for appellee.

RAWLINGS, Justice.

Action at law against multiple defendants for damages resulting from claimed negligence-caused-death of plaintiff's decedent. He was killed instantly about 11:00 A.M., March 17, 1966, when struck by a motor vehicle at a point about three miles north of Knoxville, on the easterly portion of Highway 14, while serving as a utility company line repair project flagman.

Trial to jury resulted in judgment on verdict for plaintiff against all defendants, and from order overruling their motions for a new trial they appeal. We reverse.

Incidentally, the jury also found adverse to defendant DeBoom on his cross-petition against defendants Bandstra, Deur and Vander Molen, but no error is asserted on this appeal with regard to that finding.

Plaintiff is administrator of the estate of Merrill R. Adams, deceased.

Defendants Melvin Deur and Jacob Vander Molen, doing business as Peoria Stockyards, owned a cattle hauling truck-tractor and trailer unit, operated at the time here concerned by their employee and co-defendant Roger Bandstra.

Clarence Richard DeBoom, another defendant, then owned and was operating a Mercury automobile.

In connection with a line repair project, an Iowa Power and Light Company crew had blocked the easterly half of the north-south two lane highway. Decedent was stationed at the south end of this work area. He was clearly visible from a distance of approximately half a mile to north bound vehicle operators.

Both the Peoria Stockyards truck and the DeBoom car were traveling in a northerly direction. At some distance from decedent's work station DeBoom passed the cattle truck and pulled back into the east lane, with the truck then following. In this alignment the vehicles proceeded north for about two and a half blocks before DeBoom turned his car toward or into the west lane in accord with decedent's signal.

Testimony as to subsequent events is in some degree of conflict.

Evidence introduced by plaintiff is to the effect both vehicles were reducing speed just before the accident, with the car slowing faster than the truck which was weaving "back and forth" across the highway center line.

Bandstra says the car braked suddenly, causing him to swerve sharply into the east lane where decedent flagman was standing, and he "just couldn't get the truck stopped in time."

DeBoom testified he turned onto and remained in the west lane until after having passed the point where decedent was standing.

In any event, the record unquestionably reveals the truck collided with the rear of DeBoom's car and struck decedent.

Plaintiff alleged separate and concurring negligence on the part of DeBoom and Bandstra and derivatively his employers.

The jury returned a verdict of $101,173.-05 for plaintiff against all defendants, to which $10,173.57 interest from date of death was added by trial court. See Abel v. Dodge, 261 Iowa ——, 152 N.W.2d 823, 828–829.

On appeal all defendants assert error by trial court in denying them the right to cross-examine witnesses for plaintiff, to introduce evidence relative to federal and state income taxes, past and future, as they relate to loss of services and support of a spouse or parent, and present worth of decedent's estate.

An attendant exception is directed to trial court's refusal to instruct the jury regarding consideration of these tax consequences.

Defendants also claim trial court erroneously overruled their objections to the testimony of plaintiff's expert witness. Another error relied on by defendants for a reversal goes to. the matter of claimed duplication of damages.

Defendant DeBoom alone urges in support of a reversal, trial court erred in, overruling his motion for a mistrial; failing to direct a verdict in his favor; submitting to the jury instructions as to certain specifications of negligence not pled; and giving other instructions claimed to be vague or misleading.

All defendants assert reversible error in denying their respective motions for a new trial premised upon the foregoing asserted errors.

These complaints will not necessarily be considered in the order presented, and overlapping assignments will be dealt with accordingly.

I. Our review is confined to errors properly assigned and argued. Rule 344(a) (3) and (4) (First) (Third), Rules of Civil Procedure. And it is not for us to

weigh the evidence or pass on credibility of witnesses. Rule 344(f) (1), R.C.P. Furthermore, he who pleads and relies upon the affirmative of an issue must carry the burden of proving it by a preponderance of the evidence. Rule 344(f) (5) (6), R.C.P.

II. At the outset it should be noted no defendant here claims plaintiff's decedent was in any manner guilty of contributory negligence. And as we· said in Hartwig v. Olson, Iowa, 158 N.W.2d 81, 88: "A worker on the highways is not charged with the same degree of care as an ordinary pedestrian. Plaintiff was required to exercise only such reasonable care and observation for his safety as was under the circumstances called for. (Authorities cited). We recognized the same rule in Pappas v. Evans, 242 Iowa 804, 48 N.W.2d 298, where a railroad worker was injured by a motor vehicle."

III. Prior to trial plaintiff moved for an order in limine, stating in relevant part: "The plaintiff in this case asks damages for the wrongful death of her decedent. The evidence will show that the decedent at the time of his death was employed for wages of approximately $9,000.00 per year. A principal item of damage will be loss of services and support to the surviving spouse and three minor children of the decedent. The plaintiff will expect to introduce evidence as to the gross earnings of the decedent for the last several years of his life. The *plaintiff wishes to be able to do so without cross examination of witnesses as to the amount by which income tax may have reduced gross earnings, and without comment by counsel in argument to the jury that gross earnings should be reduced by income taxes * * *.*" (Emphasis supplied). Trial court agreed with plaintiff and an order in limine was accordingly entered.

In course of trial Norma E. Adams, decedent's widow, and Dr. William F. Kenkel, a professor of family sociology at the University of Kentucky, were called to testify for plaintiff.

As to each of these witnesses defendants made timely, jury-absent offers of proof regarding decedent's income tax payments for the years 1961–1965, "as relevant upon the question of damages."

These proffers were overruled with trial court's observation its ruling appeared to be in accord with the majority view. Even so, we are persuaded that portion of the order in limine quoted supra, and denial of defendants' subsequent offers of proof constitute reversible error.

It might momentarily appear we are here confronted with impact of taxes paid on income, limited to *past* services and support by a spouse and parent. But closer analysis reveals both the error and impracticality of such a restricted approach.

In the first place, the order sustaining the motion in limine and defendants' proffers when fairly interpreted, disclose the parties and trial court were referring to determination of damages generally.

Next, it is difficult if not impossible to draw a clear cut meaningful line of demarcation between tax consequences, past and future, with regard to net worth of a decedent's estate.

Moreover, since we are here confronted with what is apparently an issue of first impression in Iowa, coupled with the fact this case must be remanded for a new trial, a consideration, perforce limited by the record to probable income taxes payable, both state and federal, as they relate to or may affect present estate value, may serve to eliminate a second appeal.

With relatively few exceptions all earnings are attended by tax consequences. This means that out of future income must come taxes before there can be any savings. So, what an individual will probably receive as the result of his or her own efforts is, in most instances, governed by taxes payable on such earnings. Thus the estate, if any, which a person would be apt to have accumulated, but for untimely death, is directly affected by taxes.

Apparently most courts have heretofore held the deduction of taxes from a decedent's likely income should not be brought to the jury's attention. This stand is premised, in large part, upon the theory that prospective taxes are too speculative and conjectural. See 22 Am.Jur.2d, Death, section 154, page 719, and Annos. 63 A.L. R.2d 1393, 1398.

Conversely other authorities have adopted the view that taxes attendant upon a decedent's probable earnings or income should, in proper cases, be admissible in evidence the same as other offsetting factors. See 22 Am.Jur.2d, Death, section 154, pages 719–720, and Annos. 63 A.L.R. 2d 1393, 1404.

It is to us self-evident future probable taxes are no more speculative than any other element a trier of the facts is permitted, if not required, to consider in the determination of wrongful death damages. Reference to a relatively few such factors will suffice: Determination of anticipated living costs; life expectancy; future earnings or income; prospective value of the dollar; and expected interest rates.

■ As here applied the principle underlying allowance of damages is that of compensation, the ultimate purpose being to place the injured party in as favorable a position as though no wrong had been committed.

■ On the other hand no rule of law should permit an injured party, be it an individual or estate, to receive more than has been lost as the result of some tortious act.

Mindful of the foregoing, we find that if loss of estate damage is determined in light of estimated income, after taxes and other attendant recognized factors, the result will more nearly effectuate actual loss. Stated otherwise, if plaintiff administrator's present value of estate loss were to be calculated, exclusive of probable future tax obligations, the resultant award would be an amount on which decedent would have had to pay taxes if received as wages or other income, thus allowing recovery to plaintiff of more than was lost.

■ This court is satisfied and now holds it is more realistic, reasonable and fair that a defendant be permitted, in a wrongful death action, to cross-examine plaintiff's witnesses, present evidence, and comment in argument to the jury or trier of the facts, with regard to the incidence of taxes, federal and state, upon a decedent's past and probable future earnings or income as they relate to present value of a decedent's estate.

This holding is supported by O'Connor v. United States (2 Cir.), 269 F.2d 578, 584–585; Brooks v. United States, D.C., 273 F.Supp. 619, 628–632; Furumizo v. United States, D.C., 245 F.Supp. 981, 1014; Meehan v. Central Railroad Company of New Jersey, D.C., 181 F.Supp. 594, 623–625; 25A C.J.S. Death § 101, page 907; 22 Am.Jur.2d, Death, section 154, page 719; 19 Ohio State L.J. 157; and Annos. 63 A.L.R.2d 1393, 1404, et seq. See also Tedrow v. Fort Des Moines Community Services, Inc., 254 Iowa 193, 203–204, 117 N.W.2d 62, and Bachelder v. Woodside, 233 Iowa 967, 974–975, 9 N.W. 2d 464.

By the same token, the foregoing rationale applies with equal force to the future loss of support and maintenance with which we are here dealing.

Without question the amount available for support of a spouse or children is subject to the constant tax burden imposed upon income. In other words the head of a family can only spend that for the support of spouse and children which is received after taxes, i.e., take-home pay. This means the same rule applied, supra, regarding incidence of taxes, federal and state, as they relate to present value of estate, is equally applicable to any directly related taxable elements of future loss of support and maintenance attendant upon the death of a spouse or parent. The jury

instructions must, of course, be patterned in accord with the principles set forth, infra, relative to loss of estate value.

■ On the other hand no tax consequence is ordinarily associated with services of parent to children or one spouse to another. It therefore follows that in the determination of damages attributable to future family services, taxes on income are not a relevant factor and we now so hold.

IV. Another and related assignment on appeal is that trial court erred in failing to instruct the jury regarding consideration to be given the matter of taxes in determining damages incident to loss of (1) estate value, (2) services, and (3) support. By reason of our holding in Division III, supra, only claimed loss of estate value, and loss of support, will be considered.

To the extent here pertinent the jury was in part advised, by instruction 23: "First, the measure of damages for the death of Merrill R. Adams will be the March 17, 1966 worth or value of the estate which he would reasonably be expected to have saved and accumulated as a result of his own efforts from the date of his death if he had lived out the term of his natural life. This * * * is that amount which estimated at its March 17, 1966 worth or value, under all the circumstances, as disclosed by the evidence, would have come to his estate from the date of his death to the end of his natural life. In estimating such damages, if any, you may and should consider the evidence on the expectancy of life of Merrill R. Adams, his health and physical condition, his age and occupation at the time of his death, his ability to earn money, his habits as to industry, thrift and economy, the contingencies of life such as ill health, unemployment, increase or diminution of earning capacity as age advances, *and all other facts and circumstances in the evidence tending to show the amount, if any, that his estate might have accumulated if he had not met death in the accident involved herein.*" (Emphasis supplied.)

■ A reading of this part of the instruction leads us to conclude the italicized portion makes unnecessary any specific reference to consideration of the tax elements heretofore considered. That conclusion is substantiated by this statement in Kelly v. Chicago, R. I. & P. R. Co., 138 Iowa 273, 277–278, 114 N.W. 536, 538: "The office of an instruction is to state the rule of law applicable and pertinent to the matter to be determined, and not to marshal the evidence, or by special mention to give undue prominence to any particular phase or feature of the fact case-made by either party to the controversy. Nor can the court be expected to give express or special warning against every possible mistake or misapprehension into which the jury may fall in the discharge of its functions. Something must be left to the intelligent apprehension and application by the jurors themselves of the general rules stated in the court's instructions."

See also In re Condemnation of Certain Land, 256 Iowa 43, 50, 126 N.W.2d 311, and State v. Williams, 238 Iowa 838, 845, 28 N.W.2d 514.

An additional portion of instruction 23 provided: "Third, if your verdict is in favor of Norma E. Adams, Administrator of the Estate of Merrill R. Adams, deceased, you will allow such damages for the services and support as a spouse and parent as has been established by a preponderance of the evidence. In this connection you are instructed that the services of a spouse and/or parent cannot be measured with precision but you may take into consideration the circumstances of Merrill R. Adams as breadwinner for the family, husband of Norma E. Adams and father of Robert W. Adams, Barbara J. Adams, and Connie L. Adams, and the extent and nature of services and support that the decedent furnished for his wife and children prior to his death and the nature of his life and services in these capacities, his age, health, strength, life expectancy and that of the surviving spouse. In arriving at your measure of damages for the loss of

services and support you may take into consideration the ages and life expectancies of the decedent and the surviving spouse at the time of his death and the ages of the surviving minor children at the time of decedent's death, which according to the evidence are as follows: * * *."

Noticeably trial court here omitted one element essential to validity under the circumstances.

■ Just as with present value of estate, supra, loss of service, or loss of support and maintenance, if any, to surviving spouse or children, must each be measured by *present* worth or value.

That was made clear in Schmitt v. Jenkins Truck Lines, Inc., 260 Iowa 556, 559, 149 N.W.2d 789, 791, when we said: "The law, as amended by the Sixty-first General Assembly (chapter 427), served to provide the same measure of damages for wrongful or negligent injury or death of a man or woman, once more expanded to include present worth or the value of their respective *services and support as a spouse or parent or both."*

With regard to the foregoing see also the informative comment and citations in Harper and James, The Law of Torts, and Supplement, section 25.12.

Under the circumstances we cannot place our stamp of approval on those portions of instruction 23 quoted in part above.

And, at this point it should be noted, loss of support, and loss of services, are separate and distinct one from the other. See 15 Drake L.Rev. 107, 109.

With reference hereto see 22 Am.Jur.2d, Death, section 154, page 719.

■ V. Defendants also claim that in permitting recovery of present value of decedent's estate *and* loss of services, and support, as a spouse or parent or both, instruction 23 allowed a double or duplicitous award of damages. We do not agree.

In the first place those views expressed in Division IV of this opinion serve to disclose absence of merit in that contention.

Next, this court held in Schmitt v. Jenkins Truck Lines, Inc., supra, chapter 427, Acts of the Sixty-first General Assembly, served to *expand* prior damage recovery rights for wrongful death *to include* present worth or value of a decedent's services and support as a spouse or parent.

More specifically we said, id., loc. cit., 260 Iowa 561–562, 149 N.W.2d 792: "One of the indispensable qualities of a legal right is certainty the state will recognize its existence and aid in its enforcement. If the person asserting a claim can say with certainty it will be not only recognized but rendered effective by the courts, he has a legal right. Otherwise his claim remains what may best be described as an inchoate right with no remedy provided. See In re Estate of Gogabashvele, 195 Cal.App.2d 503, 16 Cal.Rptr. 77, 90, 91, and 77 C.J.S. Right page 390.

"With little or no question a spouse and children often suffer loss of services and support, and are accordingly damaged by the injury or death of the other spouse or parent. However no remedy was provided in this direction until the 1941 amendment allowing a husband and children right of recovery for loss of services of a wife or mother or both. Chapter 297, Laws of the Forty-ninth General Assembly.

"As a result a damaged wife or children or both had an inchoate right only with no remedy provided for injury or death of husband or father until it was supplied by the 1965 session of the legislature. Then, realizing the apparent imbalance created by the 1941 Act, the lawmaking body enacted the amendment with which we are here concerned.

"A permissible remedy was thus provided for a recognized wrong. This must logically follow since no legislature can by mere fiat provide a remedy where no wrong has been done and no damage in

fact has been sustained. See 22 Am.Jur. 2d, Damages, section 2, page 14."

 Unquestionably there can be just one recovery for any one wrong. The legislature of this state, however, by the above cited statutory amendment, not only accorded standing to a wrong not previously recognized but also provided a remedy for it.

So we have here not one but separate wrongs for which there may be corresponding recoveries. See Wendelin v. Russell, 259 Iowa 1152, 1156–1157, 147 N. W.2d 188; sections 611.20, 611.22, 613.15, Code, 1966; and 15 Drake L.Rev. 107.

We find no irreconcilable duplication of damages recoverable.

 VI. It is also contended by defendants, trial court erroneously overruled their objections to the testimony of Dr. William F. Kenkel who testified as an expert on behalf of plaintiff.

As best we can determine the qualifications of this witness as an expert are not challenged.

Actually defendants' objections were voiced for the most part, if not entirely, with regard to hypothetical questions put to Dr. Kenkel by plaintiff.

In one instance the witness, after lengthy preliminary questioning, was asked a hypothetical question culminating in an inquiry regarding his opinion as to the amount a person such as decedent would have earned had he lived. This objection followed: "* * * This is objected to on behalf of the Defendants Bandstra and Peoria Stockyards for the following reasons and upon the following grounds: This is not the subject for expert testimony. It invades the province of the jury. It is based at least in part on studies made outside of Iowa. From the good Doctor's description of his background, any answer is obviously based on hearsay. There is no showing of personal knowledge of

decedent. Any answer would be based on speculation. No proper foundation has been laid. According to the Doctor's testimony, his studies involve groups not related to decedent. His testimony indicates that he relies upon other jobs not related to the decedent. The Doctor has stressed that in making evaluations, well, I will strike that, and stop with that last, Floyd, as being incompetent, irrelevant and immaterial." Defendant DeBoom joined in this objection.

Subsequently, when another hypothetical question was put to this witness, with a closing inquiry relative to the witness' opinion as to value of support to wife and children decedent would have furnished but for his death, the objection quoted, supra, was renewed by defendants and overruled.

In Denver v. Armstrong Rubber Co., Iowa, 170 N.W.2d 455, 462, this court stated: "Counsel who objects to a hypothetical question on the ground that it contains statements not shown in the record or omits statements from the record has the duty to advise the court in what particular respect it fails to state the record properly so the adversary may have an opportunity to remedy the alleged defect, if possible, by correcting or eliminating statements objected to. Reversible error may not be predicated upon an objection which does not tell the court the ground upon which it is based. Crozier v. Lenox Mutual Ins. Assn., 252 Iowa 1176, 1183, 110 N.W.2d 403, 407; Kunzman v. Cherokee Silo Co., 253 Iowa 885, 893, 114 N.W.2d 534, 538–539, 95 A.L.R.2d 673; In re Ronfeldt's Estate, Iowa, 152 N.W.2d 837, 846; and Van Aernam v. Nielsen, Iowa, 157 N.W.2d 138, 143." See also 88 C.J.S. Trial §§ 123–130, pages 245–265, and 31 Am.Jur.2d, Expert and Opinion Evidence, section 64, page 572.

It is at best doubtful the objections interposed by defendants, supra, were sufficiently specific to alert trial court or opposing counsel to the particular elements involved in the hypothetical questions

asked of Dr. Kenkel on which defendants relied in support of their generalized protests.

Assuming arguendo the objections did serve to sufficiently present some factors for consideration, such as the matter of hearsay, it still remains, in this case, defendants' complaints are without merit.

In Dougherty v. Boyken, Iowa, 155 N.W.2d 488, we held an *accident reconstruction expert* could not express his *factually based opinion* as to point of impact of two vehicles, premised partially on hearsay.

But in the case at bar we are dealing with expert testimony in the field of sociology, and an answer to hypothetical questions. So the rule announced in Dougherty, supra, is not here applicable.

This court was also confronted with a question regarding admissibility of testimony by a medical expert and reply to a hypothetical question in the case of In re Estate of Scanlan, 246 Iowa 52, 67 N.W.2d 5, and there said, loc. cit., 246 Iowa 56, 67 N.W.2d 7: "These questions called for opinions of the witness based upon facts found in the records in evidence and assumed to be true and the answers of the witness indicate they were so understood by him. Hence, the objections were not well founded." This is akin to the situation now before us.

Even more to the point is this statement in Jones on Evidence, Fourth Ed., section 370: "Qualified expert witnesses are not confined in their testimony to facts which are within their own personal knowledge; they may state opinions which are based upon assumed facts. Ordinarily, such an opinion is elicited by a hypothetical question—that is, a question which, for the purpose of the trial, assumes a state of facts which has been shown by the evidence of other witnesses or by the testimony of the expert himself."

And see also 31 Am.Jur.2d, Expert and Opinion Evidence, section 36, page 537.

A reading of Henneman v. McCalla, 260 Iowa 60, 148 N.W.2d 447, will disclose it does not stand as a bar to the admissibility of Dr. Kenkel's response to hypothetical questions in the instant case. It is true that in Henneman, supra, at 260 Iowa 78–79, 148 N.W.2d 458, we said: "Approving testimony similar to that here challenged, this court said, in Bridenstine v. Iowa City Elec. Ry. Co., 181 Iowa 1124, 1134, 165 N.W. 435, 439: 'The services of a competent wife or mother cannot be weighed in the scales of the money changer. And indeed it would seem almost frivolous to call witnesses to estimate their monetary value. The best that can be done is to prove the facts and circumstances of the woman's life and service in these capacities, her age, health and strength, her expectancy of life, and all that may appear to enlighten the minds and aid the judgment of the jurors, and leave them to assess such recovery within the statutory limit as they find and believe to be just.'

"See also Nolte v. Chicago, R. I. & P. Ry. Co., 165 Iowa 721, 725–728, 147 N.W. 192.

"We are not here dealing with that which *necessarily* stands in the field of expert testimony." (Emphasis supplied.)

The hypothetical questions put to Dr. Kenkel related to loss of estate value, loss of support, and to loss of services as a spouse or parent.

In any event, the foregoing quote from Henneman v. McCalla, supra, does *not* mean properly qualified expert evidence is inadmissible, where appropriate, to assist the jury in determining either loss of estate value, or loss of services and support in any wrongful death action.

With little or no question the average layman ordinarily possesses sufficient knowledge to understand, appreciate and determine the approximate loss value of interspousal or parental services, and possibly support.

On the other hand, conceding popular knowledge and common sense are unquestionably valuable in this area, that is not today the sole avenue of approach to the problems here presented.

The fact that husbands and wives usually provide aid and comfort one to the other, or have historically cared for their children, does not preclude benefit of the views of a professional, such as an economist or sociologist. Most assuredly any assessment of the future is always difficult, and those qualified as experts, with studied knowledge of life's economic and social trends and patterns, may well be able to provide invaluable assistance to a jury in evaluating always troublesome futuristic financial and sociological matters. This is nothing more than recognition of advancement in an age of pervasive technology and expanding social sciences.

Referring now to our second review of Schmitt v. Jenkins Truck Lines, Inc., Iowa, 170 N.W.2d 632, we there observed at pages 656–657: " 'The courts and other authorities uniformly agree that the receipt of opinion evidence, whether lay or expert, and the extent to which it will be received in any particular case, are matters resting largely in the administrative discretion of the court. * * * [Citing authorities].' Grismore v. Consolidated Products Co., supra, 232 Iowa 328 at 342, 5 N.W.2d 646 at 654.

" 'It is well settled in Iowa that if a witness is possessed of special training, experience, or knowledge in respect to the matter under investigation, and if his opinion based on evidentiary facts will be of aid to the jury in reaching a correct conclusion, and if the opinion expressed does not bind the jury to accept it, but leaves the ultimate conclusion to be determined by the judgment of the jurors themselves, such testimony is not improper nor prejudicial. * * * [Citing authorities].' Brower v. Quick, supra, 249 Iowa 569 at 578, 88 N.W.2d 120 at 125. See also Mundy v. Olds, 254 Iowa 1095, 1104, 120 N.W.2d 469, 475,

and Henneman v. McCalla, 260 Iowa 60, 78, 148 N.W.2d 447, 458.

"The evidence from which the jury makes its determination need not be so definite as to be capable of exact mathematical computation. Nicholson v. City of Des Moines, 246 Iowa 318, 327, 67 N.W.2d 533, 538."

■ Another point well settled is that when a qualified expert's opinion relates to a proper subject for use in evidence, an objection to the effect it invades or usurps the jury's province is of no force or effect. Grismore v. Consolidated Products Co., 232 Iowa 328, 344, 5 N.W.2d 646. See also State v. Jiles, 258 Iowa 1324, 1330–1333, 142 N.W.2d 451.

We find no abuse of discretion by trial court in overruling defendants' objections to the hypothetical questions asked of Dr. Kenkel.

These authorities lend additional support to this conclusion: Townsend v. Mid-America Pipeline Co., Iowa, 168 N.W.2d 30, 35–36; Hedges v. Conder, Iowa, 166 N.W.2d 844, 856–857; Mundy v. Olds, 254 Iowa 1095, 1104, 120 N.W.2d 469; Von Tersch v. Ahrendsen, 251 Iowa 115, 120–122, 99 N.W.2d 287, 79 A.L.R.2d 267; Nicoll v. Sweet, 163 Iowa 683, 688, 144 N.W. 615, L.R.A.1918C, 1099; Har-Pen Truck Lines, Inc. v. Mills (5 Cir.), 378 F.2d 705, 711–712; and Putman v. Pollei, Mont., 457 P.2d 776, 779.

■ VII. Defendant DeBoom, individually, asserts his motion for a mistrial, based on claimed trial misconduct by plaintiff's attorney, should have been sustained.

In aid of this assignment defendant alludes to an incident which occurred while he, as a witness, was being cross-examined.

Here in brief is the record: "Q. * * * Mr. DeBoom, do you have a driver's license? A. Yes, I do.

"Q. May I see it? (Objection by Mr. McCall overruled, no answer called for.)

"Q. Would you take it out of your billfold please? (No spoken answer, but the Record indicates the witness did so.)

"Q. Is this typing on the back to be interpreted—(Question interrupted by objection by Mr. McCall, which was sustained.)

"Q. Were there restrictions on the driver's license which you had at the time of the accident? A. No, there was not."

Assuming, without deciding, plaintiff here endeavored to initiate an improper inquiry, it was terminated before any apparent damage was done. In fact, the last answer given served to eliminate all possible prejudice.

Also, the procedure to which defendant takes exception, was neither repeated nor later pursued. Thus Brooks v. Gilbert, 250 Iowa 1164, 98 N.W.2d 309 and other authorities to which defendant refers relative to the issue now before us are neither persuasive nor controlling.

Dealing with the matter of alleged trial misconduct in Christianson v. Kramer, 257 Iowa 974, 135 N.W.2d 644, we said at 257 Iowa 980, 135 N.W.2d 648: "The trial court has considerable discretion in determining whether alleged misconduct, if there was such, was prejudicial. Certainly he is better able to appraise the situation than we are. We will not interfere with such a ruling unless it is reasonably clear such discretion has been abused. Castner v. Wright, 256 Iowa 638, 127 N.W.2d 583, 591, 128 N.W.2d 885, and citations; Mead v. Scott, supra, 256 Iowa 1285, 1290, 130 N.W.2d 641, 644, and citations."

No abuse of discretion appearing, trial court's ruling must stand.

VIII. It is also claimed by DeBoom, trial court erroneously overruled his motion for a directed verdict premised upon the claim, plaintiff failed to establish any proximate causal relationship between this defendant's conduct and the death of plaintiff's decedent.

On that subject we stated in Cronk v. Iowa Power & Light Co., 258 Iowa 603, 613, 138 N.W.2d 843, 848: "Negligence to be actionable must be a proximate cause of the injury. Proximate cause is any cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred. It is a primary moving cause or predominating cause from which the injury flows as a natural, direct and immediate consequence and without which it would not have occurred. It is not necessary to a defendant's liability that the consequences of his negligence should have been foreseen, and it is sufficient if the injuries are the natural, though not necessary or inevitable, result of the wrong. Chenoweth v. Flynn, 251 Iowa 11, 16, 99 N.W.2d 310, 313; Christianson v. Kramer, 255 Iowa 239, 249, 122 N.W.2d 283, 289, and citations."

Furthermore proximate negligence need not be the sole cause of an injury. Concurrent negligence may be a proximate cause. Henneman v. McCalla, 260 Iowa 60, 67, 148 N.W.2d 447, and citations.

So, there may be more than one proximate cause. Naxera v. Wathan, Iowa, 159 N.W.2d 513, 518. In the same vein we have held, each person whose negligence concurs or combines with that of another to cause injury to a third party is liable to the injured person, it being immaterial which of the negligent parties was the more negligent or whose negligence contributed most to the accident. Law v. Hemmingsen, 249 Iowa 820, 826, 89 N.W. 2d 386.

Also, Restatement, Second, Torts, section 439, provides: "If the effects of the actor's negligent conduct actively and continuously operate to bring about harm to another, the fact that the active and substantially simultaneous operation of the effects of a third person's innocent, tortious, or criminal acts is also a substantial factor in

bringing about the harm does not protect the actor from liability."

And as disclosed in Davidson v. Cooney, 259 Iowa 1278, 1282, 147 N.W.2d 819, an issue, such as proximate cause, may be established by circumstantial evidence.

In considering the propriety of a directed verdict for defendant, all evidence must be viewed in that light most favorable to plaintiff. Rule 344(f) (2), R.C.P.

Also applicable here is rule 344(f) (10), R.C.P., which provides: "Generally questions of negligence, contributory negligence, and proximate cause are for the jury; it is only in exceptional cases that they may be decided as matters of law."

The determinative question presented is whether we can say, as a matter of law, any claimed negligence on the part of DeBoom was not a proximate cause of the accident resulting in the death of plaintiff's decedent.

Repetition of the evidence will serve no useful purpose.

Viewed in the light most favorable to plaintiff the record discloses DeBoom, after observing a "Men Working" sign, overtook and passed the Bandstra operated truck at a high rate of speed, turned back in front of that vehicle, approached decedent flagman, slowed abruptly, and at some time turned left. Resultantly the truck swerved back and forth on the highway, could not be stopped in time, ultimately striking DeBoom's car and decedent flagman.

Upon the factual situation presented, reasonable minded men and women could rationally find DeBoom should have realized his conduct would naturally, though not necessarily, result in or concur in causing the wrong for which plaintiff seeks redress. Stated in other terms, it was for the jury to say whether DeBoom's negligence, if any, was a proximate cause of Merrill R. Adams' death.

Our examination of the cases cited by DeBoom in support of his position discloses they are either factually inapplicable or not here controlling.

Trial court did not err in overruling DeBoom's motion for a directed verdict on the claim that no proximate cause was shown with regard to any act or omission on his part at the time and place in question.

IX. We turn now to defendant DeBoom's assertion of error regarding trial court's instructions to the jury.

At the outset it is understood: "* * * instructions must be considered in their entirety and not piecemeal." Robeson v. Dilts, Iowa, 170 N.W.2d 408, 414. See also Leaders v. Dreher, Iowa, 169 N.W.2d 570, 577, and Cavanaugh v. Jepson, Iowa, 167 N.W.2d 616, 622.

This defendant first claims some instructions given related to specifications of negligence not pled.

A careful examination of the record discloses all elements of negligence set forth in the instructions, with one notable exception, are affirmatively alleged in the pleadings. Also, as might be expected, some specifications asserted by the various parties are identical or overlap.

Referring now to the proviso noted above, the jury was told by instruction 18: "The laws of Iowa provide that no person shall turn a motor vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety.

"A failure to comply with this provision of law on the part of the Defendant, Clarence Richard DeBoom, constitutes negligence."

But no such claim is advanced by plaintiff in her petition, or by defendant DeBoom in his cross-petition against defendants Deur, Vander Molen, and Bandstra.

Unquestionably these last named co-defendants, by answer to DeBoom's cross-pe-

tition, alleged as a defense, he had been guilty of contributory negligence in driving from a direct course when the movement could not be safely made. This is the only apparent allegation in that regard to be found in the pleadings.

Clearly the subject instruction goes to an affirmative act, not contributory negligence, and there is a distinction. Negligence is conduct which creates an undue risk of harm to others. Contributory negligence is conduct which involves an undue risk of harm to the person who sustains it. See section 619.17, Code, 1966; Leaders v. Dreher, Iowa, 169 N.W.2d 570; Meyer v. Schumacher, Iowa, 160 N.W.2d 433, 437–438; Brewer v. Johnson, 247 Iowa 483, 486, 72 N.W.2d 556; Prosser, The Law of Torts, Single Vol., page 428; 15 Drake L.Rev. 97; Restatement, Second, Torts, section 463; Uniform Instructions 2.1, 2.2B.

And, as this court has repeatedly held, it is reversible error to submit an issue not raised by the *pleadings* and proof. Dopheide v. Schoeppner, Iowa, 163 N.W.2d 360, 364.

Consequently we must and do hold, trial court erred to the prejudice of defendant, DeBoom, in submitting instruction 18 as given.

X. It is also contended by De-Boom, he was prejudiced by instructions 13, 14, 15, 16, 18, 19, and 20, because of trial court's failure, in some instances, to designate the party or parties to whom various elements of negligence applied, and in others naming him specifically.

Although instructions 13, 14, 15 and 16 are not identical they close with this, or like statement: A failure to comply with this provision of law constitutes negligence.

Then instructions 18, 19, and 20, are thus concluded: "A failure to comply with this provision of law on the part of the Defendant, Clarence Richard DeBoom, constitutes negligence."

A similar though not identical problem was presented in Robeson v. Dilts, supra. There the defendants objected to three instructions on the ground they failed to specify the particular driver to whom applicable and on this we said, loc. cit., 170 N.W. 2d 415: "The method used * * * here is perhaps cumbersome and inconvenient because it requires the jury to repeatedly refer back to previous instructions in order to understand a later one.

"Here the jury was told in Instruction 2 the particular negligence which each party claimed the other had been guilty of. The instructions under attack defined certain acts as constituting negligence, or as being a sudden emergency. These instructions could only apply to the person against whom the charge had been in the first place.

"We do not find the instructions were so confusing, misleading or indefinite as to constitute reversible error."

To the extent relevant, that reasoning applies with equal force in the case at bar.

It must be conceded trial court was here confronted with a relatively hurried and difficult task in the framing of jury instruction.

Without presuming to prescribe instructions to be submitted on retrial, or their form and content, some confusion might be obviated were instructions 13–16, if given, to end with this or comparable statement: "A failure on the part of any or all defendants to comply with this provision of law would constitute negligence." Otherwise, under existing circumstances, those instructions might well conclude by naming the defendants to which they apply.

XI. Upon the basis of our conclusions in Divisions III, IV and IX of this opinion, we now hold trial court erred in over-

ruling the motions for new trial filed by each and all defendants respectively.

Costs on this appeal are taxed one-half to plaintiff, one-fourth to defendant De-Boom, and one-fourth to defendants Deur, Vander Molen and Bandstra.

Reversed and remanded for a new trial.

All Justices concur except LeGRAND, LARSON, SNELL and STUART, JJ., who dissent as to Division VI.

REES, J., takes no part.

LeGRAND, Justice (dissenting).

I dissent from Division VI of the majority opinion, which deals with the expert testimony of Dr. William F. Kenkel, a professor of family sociology at the University of Kentucky.

The defendants do not question Dr. Kenkel's qualifications, nor do I. I believe, however, that some of the matters concerning which this expert testified are not the proper subjects for expert testimony at all.

As pointed out in Grismore v. Consolidated Products Company, 232 Iowa 328, 5 N.W.2d 646, our landmark case on the subject, and as repeated as recently as Dougherty v. Boyken, Iowa, 155 N.W.2d 488, 490, all expert testimony is admitted as a matter of necessity. It must first appear that a jury needs assistance on issues it is not able to intelligently and correctly determine alone. Thereafter a properly qualified expert may help the jury reach a proper determination.

The matters to which I object are those dealing with the value of loss of services, now provable as an item of damages under section 613.15, Code of Iowa. Specifically I object to allowing an expert witness to put a dollar value on these services. I believe the amount to be recovered for this loss must rest in the sound discretion of the jury unaided by such testimony.

After the usual questions concerning probable loss to the estate and loss of support, to which I raise no protest, the witness was interrogated in three areas dealing with his services to the family. The first is based on the following question:

"Q. Now, Doctor, * * *, further assume that such a man as we are talking about completed ten years of school, and in the education and care and training of his children did the following with one or more of his children: That he taught them how to drive a car and instructed on how to operate a car safely and how to perform minor maintenance and repair on a car; that he participated in sports activities such as softball, hunting, fishing, rock hunting, playing cards and games, and taught them how to safely carry and use a gun and how to properly use fishing tackle and taught the rules of safe and legal hunting and proper fishing; and further assume that he taught them how to play games and to play cards, and that by example taught the value of a good sense of humor; further assume that he helped the children with their school work and with the chemistry set and with a star telescope, and if he found he did not understand the problem that the child had, that he would take it upon himself to first solve the problem or learn the subject before he would further attempt to help the child, and that he would consult with the children about their report cards and the grades they had obtained; assume that he attended church with his family and saw that they attended Sunday School, and that he instructed them in good moral conduct; assume that he helped with Cub Scout activities and instructed on Scout achievement tests; assume that he was able to prepare food for the family and that when necessary at home and on camping trips, he did so, and instructed the family on the proper and efficient camping techniques and methods; and assume that he was a safety conscious person and a good workman and that he imparted such a knowledge to other members of his family.

Doctor, do you have an opinion based on the reasonable sociological and economic certainty as to the value of this man's services of education, care, and training of his children if his life had terminated on March 17, 1966?"

Answering over objection the witness stated:

"A. Yes, the lifetime value of these education and training services would be $13,120.40, and the commuted or discounted value of the services would be $11,414.42."

Then this question was posed to the witness:

"Q. Doctor, * * * further assume that such a man was by experience qualified as a plumber, electrician, high line construction worker, welder, mechanic, and that such a man performed maintenance tasks around his home such as washing his car, changing the oil, making minor repairs to the family car, sanding floors, laying floor tile and linoleum, repairing appliances such as radios, washing machines, dryer, iron, stove, etc., repaired wiring in the house, installing new wiring and outlets throughout the entire house, repairing a roof, installing a new roof, puttying around the windows, adding a new room to the home, building kitchen cabinets, making needed . repairs to the plumbing system including the installation of new faucets, painting the exterior of the house, painting the interior walls, hanging wallpaper in various rooms, and in doing all such tasks such a man was well qualified to perform them and was deliberate and exacting in his work. Doctor, do you have an opinion as to the reasonable value in this County of such services of maintenance tasks as performed by such a man?"

Again after objection the answer came in as follows:

"A. The lifetime value of these services would be $69,805.18 whereas the commuted or discounted value would be $35,981.34."

Then came this question:

"Q. * * * Let's further assume that such a man made or helped make decisions, choices, and selections that had an impact on and affected the welfare of the family and/or family members such as helping to select the family home, deciding when it would be best for the family and for them to move to a different community, determining when it was economically or otherwise desirable to trade the family car, formulating or helping to formulate plans for the family vacations, choosing the proper and necessary camping equipment, consulting with his wife about the future of their children including deciding to help as much as he could toward a higher education for the children, partaking in the discipline decisions in regard to the children, and in many cases making those decisions, helping to decide on the purchase of mutual funds such as a method for savings for the family, and being available to make any other decisions necessary for the well being of the family. Doctor, on these assumptions, do you have an opinion as to the reasonable value in this County of such services of making or helping to make decisions as performed by such a man?"

The answer in this instance was:

"A. The lifetime value of these services is $14,155.60, and the commuted or discounted value is $7,573.30."

The services covered by these three questions are those which every husband and father renders, in greater or lesser degree, to his family. I do not minimize the importance of these services, but I do contend that neither Dr. Kenkel, nor anyone else, can place a dollar value upon them.

In the first place the jury needs no help with this kind of problem. Relying on its own good judgment and every-day experience in the same community in which decedent lived, the jury should be permitted to place its own value on such services and to allow recovery in the amount which they determine. Long ago in Bridenstine v. Iowa City Electric Railway Company,

**116**

181 Iowa 1124, 1134, 165 N.W. 435, 439, cited in the majority opinion, dealing with the value of services of a deceased mother, we said, "The services of a competent wife or mother cannot be weighed in the scales of the money changer. *And indeed it would seem almost frivolous to call witnesses to estimate their monetary value.*" (Emphasis added.)

The majority would restrict the meaning of that language but I think it should be expanded to cover circumstances such as we face here.

We used the language in Bridenstine in circumstances far less disturbing than those existing here. There at least the day-to-day duties of the housewife were more easily appraisable in dollar value. What witness (expert or lay) can put a *money* value on a parent's services in teaching his son to shoot straight; or to play cards; or to drive safely; or to develop a sense of humor; or to teach them efficient camping techniques; or when to trade the family car; or when to move to a different community; or the advisability of making certain investments; or helping formulate plans for vacations?

There are other items of the same character but these will suffice to illustrate my disagreement. In my opinion the placing of a monetary value on such services is not a proper field for expert testimony at all. To permit such testimony is not only "frivolous", as we hinted in the Bridenstine case, but it actually approaches the absurd. Yet Dr. Kenkel was able to reduce the value of such services, not to an approximate figure, not to a dollar figure, but *down to the last cent.*

I repeat that expert testimony should not be permitted to say what common sense and experience tells us is impossible simply because a witness claims he can do it. There is ample precedent for the rule I would adopt. The situations which come quickly to mind are those involving pain and suffering, loss of consortium, and exemplary damage. In each of these in-stances the jury is permitted to fix its own recovery under a proper instruction that the law has no fixed standard or guide by which to reach the amount a plaintiff is entitled to.

That is the rule we should adopt here.

LARSON, SNELL and STUART, JJ., join in this dissent.